**FLETCHER, Appellant,**

**v.**

**NORTHWEST MECHANICAL CONTRACTORS, INC., Appellee, et al.**

[Cite as *Fletcher v. Northwest Mechanical Contr., Inc.* (1991), 75 Ohio App.3d 466.]

Court of Appeals of Ohio,
Williams County.

No. 90WM000010.

Decided Aug. 9, 1991.

*James M. Cutter* and *Joseph V. Hartlaub,* for appellant.

*Michael S. Scalzo,* for appellee.

ABOOD, Judge.

This is an appeal from a summary judgment granted by the Williams County Court of Common Pleas which dismissed appellant Debra A. Fletcher's complaint for workers' compensation benefits which had been awarded to her following the death of her husband, Dennis P. Fletcher. Appellant sets forth one assignment of error:

"A. The trial court erred in holding that the decedent's death was not caused by an injury sustained in the course of and arising out of his employment with defendant Northwest Mechanical Contractors, Inc., and that decedent's widow, the plaintiff-appellant in the instant case, was therefore not entitled to participate in the benefits of the Workers' Compensation Fund of the state of Ohio."

The facts that are relevant to a determination of the issues raised by this appeal are as follows. Appellant's deceased husband had been an employee of appellee, Northwest Mechanical Contractor's Inc., for about six years when, on June 3, 1986, he left his home near Ridgefield Corners, Henry County, Ohio, to drive to Montpelier, Ohio, where he had been assigned by his employer to work at the Chase Brass Co. He had traveled approximately nineteen of the twenty-seven miles when he was involved in a fatal accident on U.S. Route 20A in Williams County. Appellant filed an application for death benefits with the Industrial Commission of Ohio which was allowed administratively. On November 9, 1988, appellee filed a notice of appeal, pursuant to R.C. 4123.519, and, on December 2, 1988, appellant filed a complaint in the Williams County Court of Common Pleas which alleged a right to death benefits. On October 19, 1989, appellee filed a motion for summary judgment accompanied by the affidavit of William L. Armstrong, appellant's president, and appellant's answers to previously submitted interrogatories. On that same day, appellant's deposition, taken August 22, 1989, was filed. On November 1, 1989, appellant filed a motion for summary judgment and, on

November 14, 1989, appellee filed a memorandum in opposition to appellant's motion for summary judgment.

In her deposition and in her answers to interrogatories, appellant testified that on June 3, 1986, her husband departed for work from their home at 19–669, County Road X, Route # 2, Archbold, Ohio; that his destination was the Chase Brass factory, Montpelier, Ohio; that at the time of her husband's accident, he was an employee of appellee; that he " * * * was contacted by a telephone call from his employer on such days as his employer wanted to direct him to a different job site or give specific instructions regarding his duties on a job"; that "[t]hese phone calls were made either at night or early in the morning before my husband would leave home for work on that particular day"; that such phone calls were received frequently; that her husband was a "working foreman"; that he installed and supervised the installation of sprinkler systems for fire protection; that log sheets reflect that her husband had worked at the Chase Brass factory from December 15, 1985 through March 30, 1986, again from April 19, 1986 through May 18, 1986, and from May 26, 1986 until the date of his death; that he died while traveling on U.S. Route 20A near West Unity, Ohio; that he carried hand tools in his truck which were owned by his employer and assigned to him for use at the job site; that he was reimbursed for mileage only when the mileage to the job site exceeded either forty or forty-five miles but, since the trip to Chase Brass was less than that, he was not reimbursed for mileage to and from this site; that at the time of the accident he was driving his own truck; and that, although her husband was paid on an hourly basis, he was not paid for his travel to and from Chase Brass. The log books kept by appellant's husband, as shown by attachments to appellant's deposition, show that in 1985–1986 his work was performed at a multitude of job sites; that he worked at different locations depending upon the customer; that sometimes he would and sometimes he would not return to a specific work site after leaving another work site; that in 1985 he spent a total of approximately two hundred and fifty days at different job sites and that he traveled a total of twenty-three thousand, two hundred and sixteen miles going to and coming from approximately twenty different job sites; that in 1986, until his death in June, he spent approximately one hundred days at seven different job locations, traveling a total of six thousand thirty-one miles going to and coming from those locations.

In his affidavit, Armstrong testified that the decedent was not required, as part of his job as Sprinkler–Fitter Foreman at Chase Brass, to transport any tools; that he was not on duty but was on his own time during his travel to and from the Chase Brass site; and that he did not begin work until after he arrived at the Chase Brass site.

On July 12, 1990, the trial court issued a memorandum of decision in which it found that:

"Based on the totality of established circumstances set forth above, and referring to the reasoning of *Brulley [sic] v. Daughtery* [*Bralley v. Daugherty*], 61 Ohio St.2d 302 [15 O.O.3d 359, 401 N.E.2d 448] (1980), and *Lord v. Daughtery* [*Daugherty*], 66 Ohio St.2d 441 [20 O.O.3d 376, 423 N.E.2d 96] (1981), it must be ruled that reasonable minds could only conclude adversely to plaintiff-appellee Fletcher and find that the injury to and the death of Dennis Fletcher did not occur in the course of his employment with defendant-appellee NMCI and did not arise out of such employment."

By its judgment entry of the same date the court granted appellee's motion for summary judgment, denied appellant's motion for summary judgment and entered judgment denying appellant the right to participate in the Workers' Compensation Fund of the state of Ohio. It is from this judgment that appellant brings this appeal.

In her sole assignment of error, appellant contends that the trial court erred by holding that decedent's fatal auto accident did not occur "in the course of, and arising out of" his employment. In support, appellant argues that: (1) there is sufficient evidence to establish that decedent did not have a fixed situs of employment and that he entered the course of his employment when he left for work from his home on June 3, 1986; and (2) the case of *Lord, supra,* is distinguishable because the decedent in *Lord* was apparently engaged in a frolic of his own at the time of his fatal injury.

Appellee responds that (1) an employee who has a fixed *and limited* working place and sustains an injury while traveling to or from his place of employment is not entitled to compensation since his injury did not arise out of and in the course of his employment; (2) the decedent was an employee with a fixed and limited working place; (3) neither the "special hazard or risk" exception nor the "zone of employment" and "totality of circumstances" tests operate in this case to except decedent from the general "coming and going" rule; and (4) if decedent had no fixed situs of employment, then *Lord, supra,* should be applied to defeat compensation.

Civ.R. 56 provides, in pertinent part, that:

"Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case; and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from such evidence

or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."

The issue presented here is whether there remains a genuine issue as to any material fact and if not, whether when construing the evidence that was before the trial court most strongly in appellant's favor, reasonable minds could only conclude that appellant's husband did not receive his fatal injury in the course of, or arising out of, his employment.

The Workers' Compensation Fund is " * * * in the strictest sense a mutual insurance in which benefits are payable out of a fund created by contributions from a large number of possible beneficiaries, where it is hoped and expected that only a few will become actual beneficiaries." *Indus. Comm. v. Drake* (1921), 103 Ohio St. 628, 636, 134 N.E. 465, 467. It is, however, " * * * well settled that the Workmen's Compensation Act does not create a general insurance fund for the compensation for injuries in general to employees but only for those injuries which occur in the course of and arise out of the employment." *Lohnes v. Young, Admr.* (1963), 175 Ohio St. 291, 292, 25 O.O.2d 136, 136, 194 N.E.2d 428, 429–430.

R.C. 4123.01(C) provides, in pertinent part, that, in order for an injury to be compensable, it must be " * * * received in the course of, and arising out of, the injured employee's employment." It is axiomatic that the liberal construction to be accorded to the workers' compensation statute by virtue of R.C. 4123.95 applies to the interpretation of R.C. 4123.01(C). *Fisher v. Mayfield* (1990), 49 Ohio St.3d 275, 278, 551 N.E.2d 1271, 1275.

In order for an injury to be compensable, both prongs of the test set out by R.C. 4123.01(C) must be satisfied, *i.e.*, the injury must be received "in the course of" employment, and it must have arisen out of employment. *Fisher, supra,* at 277, 551 N.E.2d at 1274.

"The 'in the course of' prong is construed to relate to the time, place and circumstances of the injury, while the 'arising out of' prong is interpreted as referring to a causal connection between the employment and the injury." *Id.*[1]

---

1. "[I]t should never be forgotten that the basic concept of compensation coverage is unitary, not dual, and is best expressed in the term 'work connection' * * *. [A]n uncompromising insistence on independent application of the two portions of the test can, in certain cases, exclude clearly work-connected injuries." 1 Larson, The Law of Workmen's Compensation (1989) 3–3, Section 6.10. We do not believe that the Supreme Court of Ohio opted for a strict application of the two prongs of the test. The Supreme Court of Ohio in *Fisher, supra,* 49 Ohio St.3d at 277, 551 N.E.2d at 1274, made reference to *Strother v. Morrison Cafeteria*

## A. "In the course of" employment

■ As to the "in the course of" prong of the test, "[a]n employee is in the 'course of his employment' while he is performing the obligation of his contract of employment." *Indus. Comm. v. Davison* (1928), 118 Ohio St. 180, 160 N.E. 693, paragraph two of the syllabus. That is, when the employee is performing " * * * some required duty done directly or incidentally in the service of the employer," as opposed to " * * * personal business, disconnected with the employment * * *." *Indus. Comm. v. Ahern* (1928), 119 Ohio St. 41, 162 N.E. 272, paragraphs two and three of the syllabus. The "going and coming" or "premises" rule provides that an employee with a fixed place of employment, who is injured while traveling to or from his place of employment, is not entitled to participate in the Workers' Compensation Fund.

---

(Fla.1980), 383 So.2d 623, as having " * * * embarked on a well-reasoned analysis as to whether that court had developed inconsistent constructions of the basic coverage formula * * *." It was noted by the court in *Strother, supra,* at 625, that it had, in some decisions, bifurcated the elements of "arising out of" and "in the course of" and in other cases merged them. That court held in favor of bifurcation, but found no inconsistency. It found " * * * the construction of 'arising out of and in the course of employment', proposed by Larson * * * to be reasonable and conducive to the basic purposes of the workers' compensation act." *Id.* at 628. The Florida Supreme Court went on to state that Larson:

" * * * suggests that the more reasoned approach, consistent with the goals of workers' compensation acts, is not to apply these concepts entirely independent of each other but rather to view them as parts of a single test of work connectedness where deficiencies in the strength of one factor may, in some cases be made up by the strength in the other." *Id.* at 626; see, also, 1 Larson, *supra,* 3–3, Sections 6.10 and 1A Larson, *supra,* 5–438, Sections 29.00 and 29.10.

That this "quantum theory of work-connection" or "sliding scale" analysis is inescapable is evident by the analysis in *Fisher, supra.* In *Fisher,* the court stated that " * * * whether appellant's injuries arose out of her employment is determined from the totality of the circumstances, using the factors set forth in *Lord, supra.*" *Id.,* 49 Ohio St.3d at 278–279, 551 N.E.2d at 1275. *Lord* involved a situation in which "[t]here was no fixed employment situs, due to the nature of decedent's occupation * * *." *Id.,* 66 Ohio St.2d at 442, 20 O.O.3d at 377, 423 N.E.2d at 97. Implicitly, therefore, *Lord* dealt with the "arising out of" aspect of the two-prong test. Yet *Lord,* in reciting the "totality of the facts and circumstances" relied on *Bralley, supra. Bralley,* in turn, was a "zone of employment" case, which would involve, according to *Fisher, supra,* an analysis whether the employee is "in the course of" his employment. The "totality of circumstances" test, therefore, arose by virtue of application to both prongs of the requirement that the injury be "received in the course of, and arising out of, the injured employee's employment." As further illustration, both *Bralley, supra,* 61 Ohio St.2d at 303, 15 O.O.3d at 360, 401 N.E.2d at 449, and *Lord, supra,* 66 Ohio St.2d at 444, 20 O.O.3d at 378, 423 N.E.2d at 850, relying on the very same cases, stated the respective issue to be " * * * whether a 'causal connection' existed between an employee's injury and his employment either through the activities, the conditions, or the environment of the employment." It is apparent that the same factors have arisen with reference to both prongs of the test. In fact, although the court in *Fisher* relegated *Lord* to the "arising out of" prong of the test, it nevertheless employed some of the *Lord* factors to its analysis of whether appellant was "in the course of" her employment. A strict application of the bifurcated prongs of "in the course of" and "arising out of" is, therefore, not only potentially unjust, but is clearly unworkable.

*Indus. Comm. v. Heil* (1931), 123 Ohio St. 604, 176 N.E. 458; *Lohnes, supra;* *Baughman v. Eaton Corp.* (1980), 62 Ohio St.2d 62, 16 O.O.3d 45, 402 N.E.2d 1201; *MTD Products, Inc. v. Robatin* (1991), 61 Ohio St.3d 66, 572 N.E.2d 661; Young, Workmen's Compensation Law of Ohio (1971) 80–84, Sections 5.7, 5.8; 1 Larson, *supra,* Sections 15.00, 15.11.

By definition, the "going and coming" rule applies only to an employee with a fixed place of employment. There are, however, employees whose place or situs of employment is neither clearly fixed nor clearly non-fixed.

"The employment situs may present one of three major characteristics. It may be fixed situs of employment, a fact noted as being significant in numerous cases. An employee who has a fixed situs of employment reports to the same place each day to carry out his duties. An assembly line worker is a good example of one who has a fixed situs for his employment. Another characteristic of employment is the absence of a fixed situs which the reported decisions usually describe as employment having no fixed situs. A traveling salesman is one who would normally present a no fixed situs employment. The third situation involves the employee who works for varying time periods at various sites. A painter who works at the several job sites of his employer's customers is an example of one who has semifixed or temporary situs of employment. Some employees may follow a regular schedule of situs assignment while others are at a temporary situs on very infrequent occasions. Attendance at a business convention illustrates the latter situation." Young, *supra,* 81–82, Section 5.7.

The difficulty presented by the situation involving an employee with a semi-fixed employment situs is that such employment presents elements of both fixed and non-fixed employment. On the one hand, the employee with a semi-fixed employment situs has a pre-determined place of employment and exercises some degree of choice over the manner and mode of transportation; to this extent, the travel to and from work is disconnected with the employment. On the other hand, the work situs is temporary and varies depending upon where his employer directs him to work. The employee's work situs is determined by the contract between his employer and employer's customer and he is discharged to different places pursuant to the terms of his employment. To this extent, the travel is a duty performed in the service of the employer and in furtherance of the employer's business interests.

It has not been determined in Ohio if or when the "going and coming" rule will be applied to defeat compensation in the case of an employee with a semi-fixed employment situs. There are, however, Ohio Supreme Court cases which have either applied or declined to apply the "going and coming" rule to defeat compensation depending upon whether the situs of employment was

fixed or non-fixed. The court's analysis in determining whether, in these cases, the employment situs was fixed or non-fixed is instructive as to if and when the "going and coming" rule should be applied to defeat compensation in the case of an employee with a semi-fixed employment situs.

In *Heil, supra,* 123 Ohio St. at 606–607, 176 N.E. at 459, the Supreme Court of Ohio, in distinguishing a salesman from a superintendent at a particular plant, explained that "[t]he traveling salesman is employed to travel and sell goods. Necessarily he is continuously in the discharge of his duties when he is traveling in his allotted territory for the purpose of selling goods." In *Lord, supra,* 66 Ohio St.2d at 442, 20 O.O.3d at 377, 423 N.E.2d at 97, the Supreme Court held that "[t]here was no fixed employment situs, due to the nature of decedent's occupation, which at that time of the year included snow removal service. Decedent's scope of employment depended upon where his employer directed him to use the tractor." In *Lohnes, supra,* 175 Ohio St. at 293, 25 O.O.2d at 137, 194 N.E.2d at 430, the Supreme Court, in distinguishing a products control manager at a particular plant from a salesman, serviceman or insurance adjuster, reasoned that " * * * the very nature of their employment requires them to go from place to place over the public highways, and the traveling to each place to work is necessarily in the course of their employment."

It is clear from the Ohio Supreme Court's analysis in *Heil, Lord* and *Lohnes* that whether the employment situs is fixed or non-fixed and, therefore, whether the "going and coming" rule should be applied to defeat compensation, depends upon whether the traveling itself was part of the employment, either by virtue of the nature of the occupation or by virtue of the contract of employment. Other jurisdictions have held that the rule excluding coverage for injuries received when traveling to and from work does not apply if the making of the journey is itself a substantial part of the service for which the worker is employed. 1 Larson, *supra,* 4–117, Section 16.00.[2] A comparatively recent application of this rule has emerged where the employer is in the business of providing temporary labor. *Id.* at 4–123, Section 16.03; *Jackson v. Long* (La.App.1974), 289 So.2d 205. The rationale for such application is

---

2. It should be noted that the "journey itself as part of service" concept has many applications. In Ohio it could not, for example, be applied where the travel is to an otherwise fixed situs and the journey is made to that situs at odd or unusual hours. *Lohnes, supra.* In other words, in Ohio the rule regarding fixed employment relates to *place* and not to *time. Id.,* 175 Ohio St. at 294, 25 O.O.2d at 137, 194 N.E.2d at 430. This case does not, however, involve an additional journey to a fixed situs of employment. In this light, it is worth pointing out that any refusal to apply the "going and coming" rule to cases where travel is part of service would not be an exception to the "going and coming" rule; rather, it is conceptually a determination that the "going and coming" rule does not apply because the employment situs is not fixed.

that when the employer's business is such that traveling was an integral part of the contract between the employee and the employer, the risk of accident during travel was a risk interrelated with the nature of that employment. Such a case does not involve the ordinary employment situation; rather, the employer contracts with the employee to perform services for the employer's customers at a designated time and place and contracts with the customer to dispatch someone to perform the services at that time and place. The employee, therefore, is not just a worker, but a worker to be dispatched in accordance with the customer's order, and the trip to work can be regarded as a necessary and required part of his employment. *Jackson v. Long, supra,* at 208. We find the reasoning adopted in the temporary labor cases to be persuasive in determining when the "going and coming" rule should apply to an employee with a semi-fixed place of employment.[3]

Upon consideration of the evidence that was before the trial court and the law as set forth above, this court finds that: (1) it is undisputed that the decedent's employment involved his working at various job sites, that such job sites were temporary, that he was dispatched to work at job sites at times and places designated by his employer, and he was not required to report to a fixed situs each day prior to traveling to his job sites; (2) there remains no genuine issue as to any material fact; and (3) when construing the evidence most strongly in favor of appellant, reasonable minds could conclude that the decedent was a semi-fixed employee whose travel to work was a substantial part of his employment, and that he was "in the course of" his employment when he was fatally injured.

### B. "Arising out of" employment

▮ As to the "arising out of" prong of the test, " * * * whether appellant's injuries arose out of her employment is determined from the totality of the circumstances, using the factors set forth in *Lord, supra." Fisher, supra,* 49 Ohio St.3d at 278–279, 551 N.E.2d at 1274–1275. *Lord, supra,* 66 Ohio St.2d at 444, 20 O.O.3d at 378, 423 N.E.2d at 98, held that:

"Such circumstances include: (1) the proximity of the scene of the accident to the place of employment; (2) the degree of control the employer had over the scene of the accident; and (3) the benefit the employer received from the injured employee's presence at the scene of the accident."

In *Fisher, supra,* 49 Ohio St.3d at 279, 551 N.E.2d at 1275, fn. 2, the court stated that "[t]his list of factors is not intended to be exhaustive, but rather is

---

**3.** The instant case does not present the situation where a semi-fixed employee is required to check in at a fixed employment situs each day prior to traveling. See, generally, 1 Larson, *supra,* 4–118 to 4–123, Section 16.02.

illustrative of the factors that need to be considered. In this manner, the totality-of-the-circumstances approach to workers' compensation cases may continue to evolve."

As to appellee's contention that *Lord, supra,* should be applied to defeat compensation in this case because decedent was found eight miles from the Chase Brass factory, we find *Lord* to be distinguishable. The basis for the decision in *Lord* was the lack of direct evidence upon which a jury could infer that the decedent was in the scope of his employment at the time he was injured because he was found a substantial distance off course from the location of the customers he was serving and it was not known what he was doing off course at the time of his fatal accident. "Therefore, the jury would be required to speculate on this basic issue of the case." *Id.,* 66 Ohio St.2d at 444, 20 O.O.3d at 378, 423 N.E.2d at 98. In this case, there is direct evidence that decedent was on course to work when the accident occurred. Appellant testified that her husband left for work that morning and that his destination was the Chase Brass factory. Decedent was found on route to Montpelier on U.S. Route 20A headed in the general direction of the work site. Unlike the decedent in *Lord, supra,* it would not be mere guess or speculation for a jury to conclude that appellant's husband was on route to work when he was fatally injured on June 3, 1986.

Upon consideration of the evidence that was before the trial court and the law as set forth above, and in light of our finding that reasonable minds could conclude that decedent was in the course of his employment while traveling to work on the day of his fatal accident, this court finds that there remains no genuine issue as to any material fact and that, when construing the evidence most strongly in favor of appellant, reasonable minds could conclude from the totality of the circumstances that decedent's death arose out of his employment.

Accordingly, appellant's sole assignment of error is found well taken.

On consideration whereof, this court finds that substantial justice has not been done the party complaining and the judgment of the Williams County Court of Common Pleas granting summary judgment in favor of appellee is reversed. This case is remanded to said court for further proceedings not inconsistent with this opinion. Costs assessed against appellee, Northwest Mechanical Contractors, Inc.

*Judgment reversed.*

HANDWORK, P.J., and MELVIN L. RESNICK, JJ., concur.