**Leland W. DEVINE, Jr., Appellant,**

v.

**ADVANCED POWER CONTROL, INC., Appellee.**

Civ. A. No. 94A–11–002.

Superior Court of Delaware, Kent County.

Submitted: Feb. 27, 1995.
Decided: May 24, 1995.

---

James F. Kipp and Francis J. Schanne, Trzuskowski, Kipp, Kelleher & Pearce, Wilmington, for appellant.

Jeffrey M. Austin, Elzufon, Austin & Drexler, Wilmington, for appellee.

RIDGELY, President Judge.

This is an appeal from a decision of the Industrial Accident Board ("Board") denying a petition to determine compensation for injuries incurred by Leland W. Devine, Jr. ("claimant") in a car accident after leaving the work site of one of his employer's customers on February 16, 1994. The Board applied the going and coming rule to the circumstances of claimant's accident. Although claimant testified that he was intending to return to his employer's warehouse when he left the work site, the Board found instead that it was more likely claimant was intending to return home. The Board, therefore, ruled that claimant's accident did not occur in the course and scope of his employment and was not compensable. This Court holds that it was legal error to apply the going and coming rule to an employee who has a semi-fixed place of employment and

whose trips to and from work are a substantial part of his employment. Accordingly, the Court reverses the decision of the Board denying claimant's petition for workmen's compensation benefits and remands the case for proceedings consistent with this opinion.

## I. BACKGROUND

Claimant is a 28 year old control technician who was employed by Advanced Power Control, Inc. ("employer") to install electrical equipment for customers on their premises. He lives in Rising Sun, Maryland. The employer's warehouse and office is located in Newark, Delaware. Claimant performed his job duties at locations other than his employer's premises, using his own vehicle for transportation. His normal eight-hour working day was from 7:00 a.m. until 3:30 p.m. Claimant was supervised by Randolph Murphy, an installation superintendent. Murphy would often call claimant at night or early in the morning to inform him where to report to and what his duties were. Claimant used his own discretion to determine what parts and materials he needed and would go to the warehouse to pick them up as required. He kept his own time sheets and was paid an hourly rate of $15.50.

Depending upon the particular job, claimant would go to the warehouse at 7:00 a.m. to pick up supplies and then proceed to the job site. In that case, he would be compensated from the time he arrived at the warehouse until the end of the working day, including the time taken to travel to the job site. If he proceeded directly to the job site, he would be compensated from the time of his arrival there at 7:00 a.m. If he had to travel to another job site during the working day, his time traveling would be compensated. If he returned to the warehouse or office in Newark, he would be paid for the time it took to get there. However, if he left a job site and returned home directly, his time traveling from job site to home was not compensated. Mileage was reimbursed by the employer only if a job site was beyond a 50-mile radius from the warehouse in Newark, and then only to the extent the distance exceeded 50 miles.

On February 15, 1994, claimant and Murphy were in Legislative Hall in Dover looking at a one-day job involving the relocation of an outside air sensor. Claimant was directed to do the job the following day. On February 16, 1994, claimant arrived at the warehouse at 6:55 a.m. to pick up a roll of 18/3 plenum wire he needed for the Dover job. He took a roll that had been set aside for another job, as well as some small parts. He then drove down to Dover.

Claimant finished the installation at approximately 2:00 p.m. He loaded up the material that was left over and called Murphy at 2:20 p.m. to tell him the job was done. Murphy said, "Okay. See you." Claimant left Legislative Hall and was involved in a car accident at the intersection of Routes 13 and 113 in Dover. As a result of the car accident, claimant was hospitalized and his car was towed to storage. Subsequently, Murphy and claimant's father went to the car to retrieve the employer's property and claimant's personal belongings. The former consisted of blueprints and some leftover wire. Murphy later completed claimant's time sheet for him, crediting claimant with a full eight hour day.

At the hearing, the Board heard testimony from claimant and Murphy. Claimant testified that he was driving back to Newark in order to return the leftover wire to the warehouse when the accident occurred. Claimant stated that on the afternoon of February 16, 1994 he did not know where his next job assignment would be. He expected that Murphy would call him that night. Claimant explained that he had to return the roll of wire to the shop because it had been set aside for another job and the person working that other job would have been short on material. He also felt that taking the wire home would constitute stealing. Had claimant driven directly home from the Dover job site, the trip would have taken him one and a half hours. The trip from Dover to the warehouse took 45 minutes. It normally took one hour for claimant to travel from the warehouse to his home in Maryland. So had claimant gone home via the warehouse first to return the wire, he would have added 15 minutes to his travel time.

Murphy testified that the Dover job site was approximately 30 miles away from the warehouse and thus not sufficiently distant to reimburse claimant for his mileage. He testified that he did not know whether claimant was returning to the warehouse or going home after the Dover job was finished. It was Murphy's understanding that he would call claimant later that night to tell him where his next job would be. Murphy further testified that wire was an abundant material and it was common practice for people to take home tools and materials in their vehicles until it was convenient to return them. Murphy would not have considered that claimant was stealing from the employer if he had kept the wire overnight. From the employer's point of view, it did not make economic sense to pay someone to bring back the wire. Murphy stated that he paid claimant for working eight hours that day without taking into account the time it would have taken claimant to return to the warehouse. Murphy had not even known that claimant had been to the warehouse that morning.

The Board was not persuaded by claimant's testimony that the accident occurred in the course and scope of his employment. The only issue of concern to the Board was whether the claimant was returning to the warehouse or his home after finishing the job at Legislative Hall. In the latter circumstance, he would be within the going and coming rule and not entitled to compensation under the Board's interpretation of the rule. If he were returning to the warehouse, his accident would be compensable. The Board made the following findings:

> The Board did not find Claimant's testimony on this issue to be persuasive. Keeping the wire in his car until the next day would not be an unusual practice and is not likely to have led to any accusation of theft. There was no reason to return it at the end of the day for someone else's use. It is more likely that Claimant left the job and was intending to go home and is therefore within the coming and going rule. He was not reimbursed for his mileage at that site which would have provided an exception to the rule.

The Board, therefore, denied claimant's petition for compensation.

## II. STANDARD OF REVIEW

On an appeal from a decision of the Industrial Accident Board, the function of the Superior Court is to determine whether the Board's decision is supported by substantial evidence and is free from legal error. *General Motors Corp. v. Freeman,* Del.Supr., 164 A.2d 686, 688 (1960); *Johnson v. Chrysler Corp.,* Del.Supr., 213 A.2d 64, 66 (1965); *General Motors Corp. v. Jarrell,* Del.Super., 493 A.2d 978, 980 (1985). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Oceanport Industries, Inc. v. Wilmington Stevedores, Inc.,* Del. Supr., 636 A.2d 892, 899 (1994); *Battista v. Chrysler Corp.,* Del.Super., 517 A.2d 295, 297 (1986), *app. dism.,* Del.Supr., 515 A.2d 397 (1986). The Superior Court does not weigh the evidence, determine questions of credibility, or make its own factual findings. *Johnson v. Chrysler Corp.,* 213 A.2d at 66. It merely determines if the evidence is legally adequate to support the Board's factual findings. 29 *Del.C.* § 10142(d).

## III. FACTUAL FINDINGS

Claimant argues that the Board's factual determination that claimant was more likely to be heading home is not supported by substantial evidence. Claimant testified as to his intent and argues that the uncontroverted facts reasonably support the probability that he was returning to the warehouse. The employer argues, on the other hand, that the issue of claimant's intent was a matter of credibility for the Board to determine and there is substantial evidence to support the Board's finding that claimant was returning home at the time of his accident.

The Board is required to set forth the basis upon which it makes its findings. *Hughes v. Catalytic, Inc.,* Del.Super., C.A. No. 91A–04–1, 1992 WL 91145, Taylor, J. (April 23, 1992) (Order) at 6. Although the Board did not explicitly state that claimant's testimony as to his subjective intent was not credible, the Court can infer such a finding from the Board's statement that it did not

find claimant's testimony on this issue "persuasive" and from its ultimate conclusion. *See Haveg Industries, Inc. v. Humphrey*, Del.Supr., 456 A.2d 1220, 1222 (1983). The Board instead relied upon Murphy's testimony as to the abundance of the wire and the practice of keeping materials in personal vehicles overnight without suspicion of theft to justify its finding that it was more likely that claimant was intending to go home. Although there are other uncontroverted facts in the record which tend to support claimant's testimony, it is not the province of the Court to weigh the evidence before the Board. *Johnson*, 213 A.2d at 66. There was evidence in the record which a reasonable mind might accept as adequate to support the Board's conclusion that claimant was in fact returning home at the time of his accident.

## IV. GOING AND COMING RULE

■ Claimant further argues that, even if he were returning home, the Board erred in denying him compensation because travel was an integral part of his employment and was for the convenience and benefit of his employer. The employer counters that claimant was merely a commuter on his way home from work and that, under the totality of the circumstances, there is not a sufficient nexus or closeness of relationship between the employment and accident such that the accident arose in the course and scope of claimant's employment.

■ Delaware's Workmen's Compensation Act defines a compensable personal injury as:

Personal injury sustained by accident arising out of and in the course of the employment [but it] shall not cover an employee except while he is engaged in, or about the premises where his services are being performed, which are occupied by, or under the control of, the employer (his presence being required by the nature of his employment), or while he is engaged elsewhere in or about his employer's business where his services require his presence as a part of such service at the time of injury. . . .

19 *Del.C.* § 2301(15). This section has been interpreted to create the so-called "going and coming" rule of employer nonliability. *Histed v. E.I. Du Pont de Nemours & Co.*, Del. Supr., 621 A.2d 340, 343 (1993). This rule denies compensation for injuries sustained during an employee's regular travel to and from work because employees face the same hazards during daily commuting trips as does the general public. *Id.; Collier v. State of Delaware*, Del.Super., C.A. No. 93A–06–022, 1994 WL 381000, Del Pesco, J. (July 11, 1994) (Order) at 4. Those risks are no different from those confronting employees on personal excursions. *Histed*, 621 A.2d at 343 (citing *Alitalia Linee Aeree Italiane v. Tornillo*, 91 Md.App. 191, 603 A.2d 1335, 1337 (1992)). Claimant's argument raises the issue whether the Board was correct in applying the going and coming rule to the facts of this case.

■ The basic going and coming rule applies to employees who have fixed hours and place of work and is also known as the "premises" rule.

As to employees having fixed hours and place of work, injuries occurring on the premises while they are going to and from work before or after working hours or at lunchtime are compensable, but if the injury occurs off the premises, it is not compensable, subject to several exceptions. Underlying some of these exceptions is the principle that course of employment should extend to any injury which occurred at a point where the employee was within range of dangers associated with the employment.

1 A. Larson, *The Law of Workmen's Compensation* § 15.00 (1993). In cases of off-premises injuries, exceptions to the basic premises rule exist for employees who are sent on special errands; employees continuously on call; and employees who are paid for their time while traveling or for their transportation expenses. *Id.* at § 16.04. The explanation for these exceptions is found in the principle that the journey to or from the employer's premises is an inherent part of the service for which the worker is employed. *Id.* at § 16.04.

■ The "special errand" exception is a recognized principle of Delaware law. *Hist-ed*, 621 A.2d at 343. The substance of this rule is that:

> When an employee, having identifiable time and space limits on his employment, makes an off-premises journey which would not normally be covered under the usual going and coming rule, the journey may be brought within the course of employment by the fact that the trouble and time of making the journey, or the *special inconvenience, hazard or urgency* of making it in the particular circumstances, is itself sufficiently substantial to be viewed as an integral part of the service itself.

*Id.* (quoting 1 Larson, *supra*, § 16.10) (emphasis in opinion). This Court has also recognized an exception for an employee who is injured during her routine journey to work where her travel expenses are reimbursed by the employer. *See Collier v. State, supra*, at 7 (compensation for travel expense brings an otherwise ordinary work commute within the scope of employment). These cases focus attention exclusively on the journey—was there an urgency associated with the journey or was the employee compensated for the time or expenses of the journey itself? 1 Larson, *supra*, § 17.52.

■ There is another line of cases which hold that if an employee as part of his job is required to bring with him his own motor vehicle for use during his working day, the trip to and from work by that fact alone falls within the course of employment. *Id.* § 17.51. The theory behind this special rule is two-fold:

> [T]he obligations of the job reach out beyond the premises, make the vehicle a mandatory part of the employment environment, and compel the employee to submit to the hazards associated with private motor travel, which otherwise he would have the option of avoiding. But in addition there is at work the factor of making the journey part of the job, since it is a service to the employer to convey to the premises a major piece of equipment devoted to the employer's purposes.

*Id.* § 17.52. In this situation, it is immaterial whether the employee is compensated for the time or expenses of the journey, since work-connection is independently established by the fact of conveying the vehicle to the premises. *Id.; see also Cook v. A.H. Davis & Son, Inc.*, Del.Super., 567 A.2d 29, 32 (1989), *app. refused*, Del.Supr., 567 A.2d 418 (1989) (driving the crew to and from work and the necessary ancillary repair of the disabled truck were part of Cook's service).

Another example of travel being interrelated with employment may occur in the growing business of providing temporary labor. *See Cluff v. Spencer's Cleaning Service, Inc.*, Del.Super., C.A. No. 88A–FE–3, 1988 WL 116417, Stiftel, P.J. (October 24, 1988) letter op. at 4 (citing 1 Larson, *supra*, § 16.03). In *Cluff*, the employee was part of a cleaning crew that cleaned houses at different locations. Cluff reported to her employer's office/home one morning, carrying in her car cleaning equipment that had been left over from a previous job. Although her employer had borrowed a vehicle to transport Cluff and other employees to the job site, Cluff decided to drive her own car to the job site because it was raining that morning and the borrowed car was crowded and in poor condition. Cluff drove approximately six blocks from her employer's office/home when she was involved in an accident. The employer argued that Cluff had removed herself from the course and scope of the employment by refusing to ride in the provided transportation. This Court, however, found "a closeness of relationship between the accident and her employment which justifies a decision that she was on her employer's business and was acting for the benefit of her employer." *Id.* at 5. The fact that she had elected not to ride in the employer's car because of its poor condition did not take her out of the scope of employment. Nor was the issue whether payment for work started upon entering the transporting vehicle or arrival at the job site a controlling factor. *Id.* at 6. This Court ruled that the daily trip requirement had a risk factor interrelated with the employment and, therefore, the employee should be protected while traveling to her assigned place of work in compliance with her employer's requirements and for the employer's benefit.

*Id.* (citing *Jackson v. Long,* La.App., 289 So.2d 205, 208 (1974)).

*Cluff* can be factually distinguished from the present case because the employee there reported to the employer's premises before traveling to the remote work site and thus had an identifiable point in time and space where her employment began. The first leg of her journey, from home to the reporting site, would have been considered outside the scope of employment had the accident occurred then. *See* 1 Larson, *supra,* § 16.02 (If outside or traveling workers are required to check in at a certain place in the morning, the journey to that place in the morning is not within the course of employment). However, the absence of the requirement to report at an identifiable time and place does not change the fundamental legal analysis of whether the journey is a substantial part of the service for which the worker is employed; it merely changes the point at which the course of employment begins. *See id.* § 16.01 (traveling men are generally within the course of their employment from the time they leave home on a business trip until they return, for the self-evident reason that the traveling itself is a large part of the job).

In a case factually more similar to this one, *Fletcher v. Northwest Mechanical Contractors, Inc.,* 75 Ohio App.3d 466, 599 N.E.2d 822 (1991), the Ohio Court of Appeals reversed a decision which denied the appellant workmen's compensation benefits for the reason that her husband's injury and death did not occur in the course of his employment. Appellant's husband had left his home and was driving to an assigned job site when he was involved in a fatal accident. Before his death, appellant's husband was employed as a foreman installing sprinkler systems. He was normally contacted at home by a telephone call from his employer at night or early in the morning when the employer wanted to direct him to a different job site or give specific instructions regarding his duties. He carried hand tools in his truck that were owned by his employer and assigned to him for use at the job site. He was reimbursed for mileage only when the distance to the job site exceeded 40 or 45 miles. He was not reimbursed for mileage on his last trip since the job site was less than the required distance. He was paid on an hourly basis, but was not paid for his travel to and from the job site.

The Ohio Court of Appeals analyzed the going and coming rule in the context of employment situs. *Id.* 599 N.E.2d at 826.

> The employment situs may present one of three major characteristics. It may be fixed situs of employment.... An employee who has a fixed situs of employment reports to the same place each day to carry out his duties.... an assembly line worker is a good example of one who has a fixed situs for his employment. Another characteristic of employment is the absence of a fixed situs.... A traveling salesman is one who would normally present a no fixed situs employment. The third situation involves the employee who works for varying time periods at various sites. A painter who works at several job sites of his employer's customers is an example of one who has semifixed or temporary situs of employment. Some employees may follow a regular schedule of situs assignment while others are at a temporary situs on very infrequent occasions.

*Id.* (quoting Young, *Workmen's Compensation Law of Ohio* (1971) 81–82, § 5.7). The going and coming rule applied, by definition, only to an employee with a fixed place of employment. *Id.* Where the employee had a semi-fixed place of employment, the Court followed the reasoning adopted in temporary labor cases such as *Jackson v. Long,* La. App., 289 So.2d 205 (1974). *Fletcher,* 599 N.E.2d at 827. In those cases, where an employer contracted with the employee to perform services for the employer's customers at a designated time and place and contracted with the customer to dispatch someone to perform the services at that time and place, the employee's trip to work was, therefore, a necessary and required part of his employment. *Id.* (citing *Jackson,* 289 So.2d at 208). Consequently, the risk of accident during travel was a risk interrelated with the nature of the employment. *Id.*

The Ohio Court of Appeals found that where an employee worked at various tempo-

rary job sites, was dispatched to work at job sites at times and places designated by his employer and was not required to report to a fixed situs every day prior to traveling to his job sites, then reasonable minds could conclude that he was an employee with a semi-fixed place of employment whose travel to work was a substantial part of his employment, and that he was in the course of his employment when he was fatally injured. *Id.* Since the employee was on route to work when he was fatally injured, the Court concluded from the totality of the circumstances that his death arose out of his employment. *Id.* 599 N.E.2d at 828.

In the present case, it is undisputed that claimant was dispatched by his employer to work at temporary job sites where his employer had contracted to install and maintain equipment for its customers. He was not required to check in at the office or warehouse in Newark, but used his own discretion to pick up materials for the jobs as needed. He used his own motor vehicle to travel to the various work sites. In his motor vehicle he carried materials, blueprints and other supplies necessary to fulfill his duties as an employee. During the working day, if required by his employer, claimant would travel from one work site to another in his own motor vehicle. Thus, claimant, while traveling to and from his assigned work places, was furthering his employer's business interests. Claimant had a semi-fixed place of employment and his travels, including his travel at the time of the accident, were a substantial part of his employment. Because the totality of the circumstances show that the injuries here arose out of and in the course of claimant's employment, the going and coming rule is inapplicable as a matter of law.

## V. CONCLUSION

The Board's factual determination that claimant's accident occurred while he was returning home was supported by substantial evidence. Nonetheless, the Board erred as a matter of law in concluding that the going and coming rule applied to defeat compensation in this case. Under a totality of circumstances analysis, the injuries to claimant arose out of and in the course of his employment and he is entitled to benefits under the workmen's compensation law.

For the foregoing reasons, the decision of the Industrial Accident Board is *RE-VERSED* and this matter is *REMANDED* for proceedings consistent with this memorandum opinion.