Mary E. SPELLMAN, Employee
Below, Appellant,

v.

CHRISTIANA CARE HEALTH
SERVICES, Employer
Below, Appellee.

No. 315, 2012.

Supreme Court of Delaware.

Submitted: March 27, 2013.
Decided: April 8, 2013.

Eric M. Doroshow, Esquire (argued), Thomas B. Lackey, Esquire (argued), Doroshow, Pasquale, Krawitz & Bhaya, Milford, Delaware, Attorneys for Appellant.

Maria Paris Newill, Esquire (argued), Heckler & Frabizzio, Wilmington, Delaware, Attorney for Appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices, constituting the Court en Banc.

JACOBS, Justice:

Appellant Mary E. Spellman ("Spellman") petitioned the Industrial Accident Board (the "Board") for a workers' compensation award against her employer, Appellee Christiana Care Health Services ("Christiana"). The Board denied the petition and the Superior Court affirmed. Spellman then appealed to this Court. For the reasons discussed herein, we affirm the judgment of the Superior Court, although on a different ground.

### FACTS AND PROCEDURAL HISTORY

Spellman had been employed as a home health aide for Christiana's Visiting Nurse Association for 18 years. Her duties as a home health aide involved assisting patients in their homes with personal hygiene and providing light housekeeping services. Spellman performed those

duties in the patients' homes, for which she was paid $12.15 per hour. She was not paid for time that she spent at lunch.

Spellman traveled in her personal automobile to the patients' homes and paid for her own gas and car insurance. Christiana reimbursed Spellman for mileage at the rate of 42 cents per mile. It did not reimburse Spellman for the mileage she incurred while traveling from her home to the home of her first patient of the day, or from the home of the last patient to her home. Spellman was reimbursed only for mileage incurred for traveling from the home of one patient to the home of another.

As part of her job duties, Spellman reported to Christiana's office in Millsboro for meetings approximately once each month. Also, she would occasionally go to the Millsboro office to pick up work supplies such as housekeeping products. Spellman customarily kept those supplies in her car.

Spellman received her weekly work schedule in one of two ways. She either picked up her schedule at the Millsboro office when it was available every Friday, or accessed her schedule from any location using Telephony, a telephone-based system used by all of Christiana's home health aides. Employees such as Spellman would use Telephony to "clock-in" and "clock-out" of work, by using either a patient's home telephone or the employee's personal cell phone. When leaving a patient's home to visit another patient, the employee would use Telephony to "check-in" for "travel time" in order to be reimbursed for mileage. After arriving at the next patient's home, the employee would use Telephony to "check-out" of travel time and "clock-in" to work time.

Any scheduling changes for a Christiana employee would also be accomplished through Telephony. For example, to be available in emergency situations, an employee would be considered "on-call" after work hours. If, however, an employee specifically "blocked-off" time during which he or she would not be available, the employee would not be on call, even for emergencies.

On January 14, 2011, the day of her car accident, Spellman had an appointment with a patient at 7:45 a.m. After concluding that appointment, she used Telephony to check-in to her travel time. At 9:15 a.m., she arrived at the home of her next patient, a Mr. Lourdy, who lived on Reynolds Pond Road in Ellendale, Delaware. After Spellman arrived at Mr. Lourdy's home, she used Telephony to check-out of travel time. Spellman also called her supervisor to remind him about her remaining schedule for that day. Previously, Spellman had blocked off several hours of time after her session with Mr. Lourdy to accommodate a personal doctor's appointment later that morning. Accordingly, Spellman informed her supervisor that she would be seeing her doctor before proceeding to her next patient appointment. On past occasions, when Spellman had had "open time" between patient visits, she would customarily return to her home before the next appointment.

Spellman finished her work with Mr. Lourdy at about 10:30 a.m., at which time she "clocked-out" using Telephony. Spellman left Mr. Lourdy's home at approximately 10:35 a.m., intending first to stop at her home to "freshen-up" and have a cup of coffee before going to her 11:40 a.m. doctor's appointment. Consistent with her arrangement with Christiana, Spellman was not reimbursed for mileage when she left Mr. Lourdy's home to drive to her doctor's appointment. Because Spellman had specifically blocked off this segment of her time, she could not be reached by Christiana Care.

Because it had snowed the evening before, the roads were wet and icy in spots. After Spellman had traveled approximately one mile from Mr. Lourdy's home, her car hit a patch of ice on the road. As a consequence, Spellman lost control, and her car hit a tree, causing injuries to her head and hip.

On April 1, 2011, Spellman filed with the Board a Petition to Determine Compensation Due ("Petition") from Christiana. Spellman claimed that the injuries she suffered in her accident were compensable under Delaware's Worker's Compensation Act.[1] At an evidentiary hearing before the Board on July 19, 2011, the sole issue was whether at the time of the accident Spellman was acting in the course and scope of her employment. Spellman argued that her status as a "traveling employee" exempted her from the "going and coming" rule that precludes worker's compensation for injuries suffered while going to or coming from work. Alternatively, Spellman argued that her injuries were compensable, because she was engaged in a "mixed purpose" trip at the time of her accident.

On July 22, 2011, the Board denied Spellman's petition. The Board determined that Spellman was not acting within the course and scope of her employment at the time of her accident, which "occurred while she was 'off the clock' and on her way home before going to a personal doctor's appointment." The Board further determined that Spellman "was not on a mixed purpose trip since there was no benefit for [her employer]," nor did Spellman's accident fall within any other recognized exception to the "going and coming" rule, such as "a special errand related to

her work ... [or] a short personal comfort stop...." As additional support for its conclusion, the Board found that Spellman "was not paid for mileage and her time" when her accident occurred. The Board concluded that Spellman's decision first to go home, and then to a personal doctor's appointment between client visits, was "so great" a departure "that it can be inferred that she abandoned her job temporarily." Finally, the Board observed that if (counterfactually) Christiana were paying for Spellman's travel expenses at the time of her accident, that "would [have brought] Claimant within the course and scope of her employment pursuant to the 'traveling employee' exception of the general 'going and coming' rule."

Spellman appealed to the Superior Court, which affirmed the Board's decision. Regarding Spellman's claim that the Board erred by not applying the "traveling employee" exception to her case, the court upheld the Board's finding that that exception did not apply. Under the totality of the circumstances, the court concluded, "the Board's decision that Claimant was not acting within the course and scope of her employment when she was injured is supported by substantial evidence and free from legal error."

This appeal followed.

## ANALYSIS

■■■■ On appeal from an Industrial Accident Board decision, this Court reviews the record to determine whether any errors of law were made in applying Delaware's Worker's Compensation Act,[2] and whether substantial evidence supports the Board's findings.[3] "Substantial evidence"

1. *19 Del. C. § 2301.*

2. *Histed v. E.I. DuPont de Nemours & Co.,* 621 A.2d 340, 342 (Del.1993); 19 *Del. C.* § 2301 *et seq.*

3. *Id.*

is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.[4] Where factual determinations are at issue, this Court takes due account of the Board's experience and specialized competence and of the purposes of Delaware's worker's compensation statute.[5]

To be eligible for worker's compensation benefits for personal injury or death, the claimant must prove that the injury sustained was "by accident arising out of and in the course of employment."[6] The determination of whether an injury arises out of and in the course of employment is highly factual, and is resolved under a totality of the circumstances analysis.[7] "Arising out of" and "in the course of employment" are distinct concepts, both of which must be separately established.[8] "In the course of employment" refers to the time, place and circumstances of the employee's injury,[9] whereas "arising out of the employment" refers to the origin and cause of the injury.[10]

### A. The Going and Coming Rule and Its Multitudinous Exceptions

The Delaware Worker's Compensation Act states in relevant part:

"Personal injury sustained by accident arising out of and in the course of the employment:"

a. Shall not cover an employee except while the employee is engaged in, on or about the premises where the employee's services are being performed, which are occupied by, or under the control of, the employer (the employee's presence being required by the nature of the employee's employment), or while the employee is engaged elsewhere in or about the employer's business where the employee's services require the employee's presence as a part of such service at the time of the injury. . . . [11]

From this language our courts have derived the doctrine commonly referred to as the "going and coming" rule[12], under which injuries resulting from accidents during an employee's regular travel to and from work are non-compensable.[13] The rationale is that, during their daily commute to and from work employees face the same risks as the general public—risks no different from those that workers confront on personal excursions.[14] When deciding whether an employee injured on his way to or from his home may recover workers' compensation, Delaware courts typically analyze first whether an exception to the "going and coming" rule applies. If not, then the courts will apply the "going and coming" rule to bar compensation.[15]

---

4. Id. (citing Olney v. Cooch, 425 A.2d 610, 614 (Del.1981)).

5. 29 Del C. § 10142(d).

6. 19 Del. C. § 2304.

7. Histed, 621 A.2d at 345.

8. See Storm v. Karl–Mil, Inc., 460 A.2d 519, 521 (Del.1983) (citing Children's Bureau v. Nissen, 29 A.2d 603, 607 (Del.Super.1942)).

9. Tickles v. PNC Bank, 703 A.2d 633, 637 (Del.1997) (citing Storm, 460 A.2d at 521).

10. Id. (citing Storm, 460 A.2d at 521).

11. 19 Del C. § 2301(18)(a).

12. Histed, 621 A.2d at 343.

13. Id. (citations omitted).

14. Id. (citing Alitalia Linee Aeree Italiane v. Tornillo, 91 Md.App. 191, 603 A.2d 1335, 1337 (1992)).

15. See Tickles, 703 A.2d at 635–37.

Over the years our case law has generated a veritable potpourri of exceptions to the "going and coming" rule. Each exception appears to have attained, over time, the status of a substantive doctrine or rule of law. One such exception is the "special errand" doctrine announced in *Histed v. E.I. DuPont Nemours & Co.*[16] Under this formulation, the "going and coming" rule does not apply where the accident occurs during a work-related trip that, because of the special inconvenience, hazard or urgency of making the trip, rises to the level of a "special errand" that is "integral" to the work itself.[17]

Another carve-out from the "going and coming" rule is the so-called "compensation exception."[18] In *Histed,* this Court held that where an employee is "paid an identifiable amount as compensation for time spent in traveling to and from work," the employee's commute is not subject to the "going and coming" rule.[19] The Superior Court has interpreted that as a distinct exception, under which "compensation for travel expense brings an otherwise ordinary work commute within the scope of employment and worker's compensation coverage."[20]

This Court has also recognized a "premises exception" to the "going and coming" rule. Under that exception, an employee is not barred from recovering workers' compensation where the employee's injury occurs on the employer's premises, even if the work day has already ended or has not yet officially begun.[21]

Yet another exception—for traveling employees—was recognized in *Devine v. Advanced Power Control, Inc.,* where the Superior Court distinguished between employees who have a "fixed situs of employment" from those "who work[ ] for varying time periods at various sites."[22] Because the latter category of employee had a "semi-fixed place of employment,"[23] the Superior Court concluded that that category of employee was not subject to the "going and coming" rule, because "while traveling to and from his assigned work places, [the employee] was furthering his employer's business interests," travel being "a substantial part of his employment."[24]

---

**16.** 621 A.2d 340 (Del.1993).

**17.** *Id.* at 343 (citing 1 A. Larson, The Law of Workmen's Compensation § 16.10 (1990)).

**18.** *Id.* at 345.

**19.** *Id.*

**20.** *Collier v. State,* 1994 WL 381000, at *4 (Del.Super. July 11, 1994).

**21.** *Tickles v. PNC Bank,* 703 A.2d 633, 636 (Del.1997).

**22.** *Devine v. Advanced Power Control, Inc.,* 663 A.2d 1205, 1212 (Del.Super.1995) (citing *Fletcher v. Northwest Mech. Contractors, Inc.,* 75 Ohio App.3d 466, 599 N.E.2d 822 (1991)).

**23.** *Id.*

**24.** *Id.* at 1213. The Superior Court relied upon, among other things, the fact that the employee traveled to temporary job sites throughout the day; that he had discretion to decide what materials to take with him; that he used his own vehicle to transport supplies and to travel from site to site; and that he was not required to check in at his employer's office. *Id.*

One year after deciding *Devine,* the Superior Court elaborated on the traveling employee exception within the context of the course of employment in *Bedwell v. Brandywine Carpet Cleaners,* 684 A.2d 302 (Del.Super.1996). The court explained that under the traveling employees exception, the "going and coming" rule is inapplicable to employees whose "travel is an integral part of their employment." *Id.* at 305. The court noted, however, that not "all injuries occurring while the [traveling] employee is 'on the road' are compensable." *Id.* The court explained that injuries "reasonably related or ... incidental to the employer's business are compensable" for

We do not quarrel with the substantive merit of the "going and coming" rule or its various exceptions. Our concern is with the profusion of those exceptions, and their treatment (in a manner akin to a "checklist") as statutorily derived, freestanding rules of law. That practice risks causing adjudicators, when deciding the "scope of employment" issue, to lose sight of the true purpose and function of those doctrines in what should normally be a simplified, straightforward analysis.[25]

■ The critical point emphasized here is that the "going and coming" rule and its multiple exceptions are not statutorily derived rules of substantive law. Rather, they are only aspects or elements of a more fundamental inquiry, namely, whether, under the totality of the circumstances, the employment contract between employer and employee contemplated that the employee's activity at the time of injury should be regarded as work-related and therefore compensable.

■ What follows, therefore, is that the analysis of the "scope" issue should start by focusing upon the employment agreement itself. If the evidence of the contractual terms resolves the issue of whether the injury arose out of and occurred in the course of the claimant's employment, then the analysis can end. If, however, the contract-related evidence is insufficient to resolve the "scope of employment" issue,

then the Board (and any reviewing court) may resort to secondary default presumptions and rules of construction that best further the statutory purpose. The "going and coming" rule and its multifold exceptions are functionally speaking, examples of secondary default presumptions and rules of construction. They are not primary, first-resort, rules of decision.

We do not mean to suggest that our courts in past cases, or the distinguished trial judge in this case, reached erroneous results by applying the "going and coming" rule and its exceptions as substantive doctrines of first resort. It is to suggest, more broadly, that this approach turns the analysis on its head and risks making it needlessly complex and disjointed.

## B. The Superior Court's Affirming Decision

The trial court's affirming decision illustrates how our preferred approach would operate. Because Spellman was driving to her home from work at the time of the accident, the Superior Court started its analysis with the "going and coming" rule, after which it addressed each exception to that rule that Spellman claimed was applicable. The court concluded that none of the argued-for exceptions applied under the factual circumstances at bar. In particular, the court found inapplicable the

---

traveling employees, while "personal deviations" from the employer's business can be "beyond the scope of this rule," and therefore would not arise out of the course and scope of employment. *Id.* Thus, the *Bedwell* court held, traveling employees who engage in acts that "minister to personal comfort," such as a lunch break, do not abandon the course and scope of their employment, "unless the extent of the departure is so great that an intent to abandon the job temporarily may be inferred. . . ." *Id.*

**25.** Doctrinal confusion may also result, as this case illustrates. In its decision the Board

observed that if Christiana were paying all of Spellman's travel expenses, that would "bring [Spellman] within the course and scope of her employment pursuant to the 'traveling employee' exception of the general 'going and coming' rule as held in *Histed*." But, *Histed* involved the "special errand" exception, not the "traveling employee" exception, the latter having been recognized in *Devine*, not *Histed*. Despite the Board's incorrect labeling, its decision correctly applied the substantive principles of law and is supported by the record.

exception for employees having "semi-fixed" places of employment. The court noted that—although Spellman would have come within the scope of that exception if she were being paid all her travel expenses—here she was not being paid her travel expenses while clocked-out and on a personal trip to her home. Therefore, the court concluded, under the "totality of the circumstances," Spellman was not acting within the course of her employment at the time she was injured.

This analysis is not legally erroneous and it is fully supported by the facts found by the Board, all of which are based on substantial evidence. We therefore have no difficulty sustaining the judgment of the Superior Court. Indeed, we would have affirmed on the basis of the trial court's opinion, but for our concern that in future cases the analysis of the "scope of employment" issue should proceed in a different way. For that reason, we choose to rest our affirmance on a different ground.

The requirement that a worker's injury be work-related—that is, arising out of and in the course of employment—derives from the Workers' Compensation Act. Although the source of that requirement is statutory, our statute (like those of our sister states) does not, and indeed cannot, precisely guide how that broadlyphrased requirement must be applied under all factual circumstances. Necessarily, that task must be accomplished, initially by the Board and ultimately by the courts, using the common law decision making process. The "going and coming" rule, and the various exceptions thereto, are not substantive doctrines mandated by the Act. Rather, they are analytic tools, worked out by our courts over time, as guidance for the statute's proper application in different sets of circumstances. To base a "course and scope of employment" analysis solely on those doctrines is to lose sight of the real-world, factual context out of which the "scope" issue arises. That context is the employment relationship, which itself is a creature of contract. Therefore, the inquiry into whether an employee's injury is sufficiently workrelated to be compensable under the statute, should start with the terms of the employment relationship or contract. Normally, that will require the Board (or a reviewing court) to draw inferences from the "totality of circumstances," within the employment contract framework.

◼ In many cases that approach will suffice to resolve the "scope" issue. This case is an example. Essentially, the result reached by the Board and the Superior Court is consistent with, and fully explained by, the terms of the employment agreement between Spellman and Christiana. That is, the contractual terms under which Spellman would be deemed "on the job" and for which she would be entitled to expense reimbursement, make it abundantly clear that under the parties' employment agreement, Spellman was not acting within the course, and her injury did not arise out of, her employment. That form of analysis would have resolved the issue without having to resort to the "going and coming" rule, or to a "check list" of the rule's many exceptions. It is on that alternative ground that we uphold the judgment of the Superior Court.

### CONCLUSION

For the foregoing reasons, the judgment of the Superior Court is affirmed.

