OPINION
{¶ 1} Appellant, Christopher Love, aka Loma, was convicted following a jury trial of the aggravated murder of Olivia Hubbert, in violation of R.C. § 2903.01(A). On November 27, 2002, he was sentenced to life in prison with parole eligibility after twenty years.
 {¶ 2} Appellant was tried along with his co-defendant and alleged accomplice, Robert Blackshear, aka Black. There were essentially three versions of the facts involved in the crime presented at trial. The state's version was that Appellant was the victim's primary assailant, but that Blackshear aided and abetted the crime by hitting the victim and helping Appellant place the victim in her apartment following the attack and leaving her to die.
 {¶ 3} Blackshear maintained another version of the crime. In his version, he concedes that he had a disagreement with the victim during which he struck her. However, Blackshear claimed their altercation was over before Appellant arrived. Thereafter, according to Blackshear, Appellant arrived and, with no provocation, knocked the victim to the ground with one blow to the face. Appellant began kicking and jumping on her body for no apparent reason. Blackshear denied helping Appellant place the victim in her apartment and leaving her to die.
 {¶ 4} Appellant presented yet another story. Appellant claimed that Blackshear was responsible for the victim's fatal injuries. Although Appellant admitted he pushed the victim in the face and caused her to fall to the ground, he denied that he kicked and jumped on her. Instead, Appellant claimed that Blackshear was the one who brutalized the victim.
 {¶ 5} The jury evidently believed Blackshear's story since Appellant was convicted of aggravated murder and Blackshear was acquitted.
 {¶ 6} Appellant timely filed his notice of appeal with this Court and asserts twelve assignments of error on appeal. For the following reasons, the trial court's decision is affirmed.
 {¶ 7} In his first assignment of error he asserts:
 {¶ 8} "THE TRIAL COURT ERRED IN DENYING THE MOTION OF DEFENDANT/APPELLANT AND HIS CO-DEFENDANT FOR SEVERANCE OF THE TWO DEFENDANTS FOR PURPOSES OF TRIAL."
 {¶ 9} Joint trials are usually favored in the law because they conserve judicial and prosecutorial time, lessen the expense of multiple trials, diminish inconvenience to witnesses, and minimize the possibility of inconsistent results and successive trials before different juries. State v. Daniels (1993),92 Ohio App.3d 473, 484, 636 N.E.2d 336, citing State v. Thomas
(1980), 61 Ohio St.2d 223, 400 N.E.2d 401.
 {¶ 10} However, Crim.R. 14, relief from prejudicial joinder, provides in part:
 {¶ 11} "If it appears that a defendant * * * is prejudiced by a joinder of * * * defendants * * * for trial * * *, the court shall * * * grant a severance of defendants, or provide such other relief as justice requires."
 {¶ 12} A trial court's decision regarding severance will not be disturbed without a clear showing of an abuse of discretion.State v. Torres (1981), 66 Ohio St.2d 340, 421 N.E.2d 1288. In fact, a defendant claiming error in the trial court's denial of a motion to sever has the burden of affirmatively showing that his rights were prejudiced. Fletcher v. Northwest Mechanical Contr.,Inc. (1991), 75 Ohio App.3d 466, 484-485, 599 N.E.2d 822.
 {¶ 13} In the instant matter, both Appellant and Blackshear asked the trial court to sever their trials. The trial court denied their requests following a hearing. Appellant reiterated his request for severance throughout his jury trial, but each request was overruled.
 {¶ 14} Appellant asserts he was denied a fair trial based on Blackshear's presentation of a mutually antagonistic defense. Appellant also claims that his joint trial with his co-defendant violated the United States Supreme Court's decision in Bruton v.United States (1968), 391 U.S. 123, 88 S.Ct. 1620.
 {¶ 15} The defenses raised by co-defendants are mutually antagonistic where each is trying to exculpate himself while simultaneously trying to inculpate the co-defendant. State v.Daniels, supra, at 484, 636 N.E.2d 336. In order to warrant severance, the defenses must be both irreconcilable and mutually exclusive. State v. Bunch, 7th Dist. No. 02 CA 196,2005-Ohio-3309, ¶ 43, citing United States v. Berkowitz (C.A.5, 1981), 662 F.2d 1127, 1133. "The essence or core of the defenses must be in conflict, such that the jury, in order to believe the core of one defense, must necessarily disbelieve the core of the other." Id.
 {¶ 16} The defenses raised by Appellant and Blackshear in the instant matter constitute mutually antagonistic defenses. Each defendant claimed the other was responsible for the victim's death. Appellant testified that Blackshear kicked and jumped on the victim causing her fatal injuries. (Tr., p. 1142.) Blackshear claimed in his tape recorded interview that Appellant kicked and jumped on the victim. (State's Exh. 64.)
 {¶ 17} Thus, if the jury believed Blackshear's defense, it could not also believe Appellant's defense. The converse is also true. As such, these defenses are mutually antagonistic because the jury's belief of one necessitates disbelief of the other defense. Bunch, supra, at ¶ 51. Joinder, in this instance, was error.
 {¶ 18} While the two defenses presented at trial were mutually antagonistic, our analysis cannot stop at this conclusion. In addition to demonstrating that the co-defendants' defenses are mutually antagonistic, Appellant must also prove that he was prejudiced by the joinder. Bunch, supra, at ¶ 44;Fletcher, supra, at 484-485, 599 N.E.2d 822.
 {¶ 19} Appellant claims he was prejudiced because the state introduced Blackshear's recorded police interview, in which Blackshear exculpates himself and inculpates Appellant. (State's Exh. 64.) Appellant's claims center on the fact that he was not afforded the opportunity to cross-examine Blackshear, and are based on the United States Supreme Court's decision in Bruton,
supra.
 {¶ 20} Bruton was later dealt with by the Ohio Supreme Court, which further explains the analysis as follows:
 {¶ 21} "`In Bruton, the Supreme Court held that in a joint trial of two defendants, a confession of one co-defendant who did not testify could not be admitted into evidence even with a limiting instruction that the confession could only be used against the confessing defendant. The rationale of Bruton was that the introduction of a potentially unreliable confession of one defendant which implicates another defendant without being subject to cross-examination deprives the latter defendant of his right to confrontation guaranteed by the Sixth Amendment.'"State v. Moritz (1980), 63 Ohio St.2d 150, 153,407 N.E.2d 1268, quoting United States v. Fleming (C.A.7, 1979),594 F.2d 598, 602.
 {¶ 22} The recorded statement Blackshear gave to the police was played for the jury. Blackshear did not testify at trial. Thus, Appellant argues that he was denied the right to confront a witness against him since he was not afforded the opportunity to cross-examine Blackshear.
 {¶ 23} The trial court did provide the jury with a limiting instruction as to the videotaped statements. This instruction, however, was not given to the jury until well after Blackshear's videotape was played. Further, the initial instruction was quite esoteric and gave little guidance. It provided: "THE COURT: I would like to bring to the attention of the jury that statements made in the three videotapes can only be held against the persons making them. The co-defendants are to be treated in this manner." (Tr., p. 1076.)
 {¶ 24} The trial court subsequently provided a more understandable jury instruction at the close of all of the evidence. (Tr., pp. 1299-1300.)
 {¶ 25} Despite these instructions and whether or not they can be seen to adequately correct the error, the Ohio Supreme Court has held, "[a] violation of an accused's right to confrontation and cross-examination is not prejudicial where there is sufficient independent evidence of an accused's guilt to render improperly admitted statements harmless beyond a reasonable doubt." Moritz, supra at paragraph two of the syllabus.
 {¶ 26} In the matter at hand, there was more than enough other evidence demonstrating Appellant's guilt in Hubbert's death to render the trial court's error in failing to sever, while regrettable, ultimately not prejudicial.
 {¶ 27} Shantal Daniel testified that he witnessed almost the entire incident. He saw the initial altercation between Blackshear and the victim during which Blackshear was chasing her. He also saw Blackshear hitting the victim several times, possibly with a knife. Thereafter, however, he saw the two walking down the road apparently amicably. Blackshear's arm was around the victim, and Daniel heard the victim apologize for interfering with Blackshear's affairs. (Tr., pp. 437-442.)
 {¶ 28} Daniel testified that then Appellant showed up and punched the victim "out cold." Appellant then repeatedly kicked and jumped on her. In fact, Daniel saw Appellant holding onto the fence while jumping on the victim as hard as he could. Daniel said he approached them to try to get Appellant to stop, and Daniel could hear the victim breathing "funny." At one point, Appellant was standing on top of the victim, and Daniel heard him say something to the effect of, "I'm the king of this mountain." Daniel also heard Blackshear urging Appellant to let her go home. (Tr., pp. 445-448, 469, 472.) Appellant carried the victim toward another apartment where Daniel heard another witness, Crystal Jefferson, yelling at Appellant. (Tr., pp. 449-451.)
 {¶ 29} Jefferson testified at trial that she saw Appellant carrying a woman over his shoulder. The woman was so badly beaten that Jefferson did not recognize her as the victim. Appellant then threw her to the ground. Both Appellant and Blackshear denied to Jefferson that they inflicted the victim's injuries. She could tell that the victim was having difficultly breathing. (Tr., pp. 523, 526, 533.)
 {¶ 30} Laponica Lampley also testified for the state. She saw Blackshear chasing the victim earlier that morning. The victim was screaming. Thereafter, she saw the two walking together. Appellant subsequently approached them and punched the victim in the face. She then saw Appellant jumping on top of the woman. (Tr., pp. 556-557, 560.)
 {¶ 31} Shannell Boone likewise testified that she saw Blackshear chasing the victim with a knife, but then she saw the two walking together. Boone said she heard Blackshear tell Appellant to leave the victim alone, but Appellant hit the victim, causing her to fall to the ground. Boone then witnessed Appellant repeatedly kicking and jumping on the victim. (Tr., pp. 640, 643, 645-646.)
 {¶ 32} The Mahoning County Deputy Coroner also testified for the state. The coroner stated that the victim's cause of death was asphyxia caused by beating or strangulation, which is the application of force against one's neck. The victim had a broken bone and cartilage in her neck. The coroner opined that the victim's injuries may have been caused by a shoe, since there was a wavy pattern apparent. The gym shoes Appellant wore on the night of the incident tested positive for human blood. (Tr., pp. 736, 747, 768.)
 {¶ 33} Based on the foregoing evidence, Appellant was ultimately not prejudiced by the joint trial and the denial of his right to cross-examine Blackshear. There appears to be more than enough independent evidence identifying Appellant as Hubbert's assailant. As such, Appellant's first assignment of error lacks merit since the trial court's decision not to sever, while erroneous, did not result in prejudice in this case.
 {¶ 34} Notwithstanding the lack of prejudice, however, we must stress concerns with the error presented here and the appearance from the record of unnecessary overreaching on the part of the prosecution. The error is only harmless in this case based on the other overwhelming evidence of Appellant's guilt.
 {¶ 35} Appellant's second assignment of error asserts:
 {¶ 36} "DEFENDANT/APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHT OF CONFRONTATION OF THE WITNESSES AGAISNT HIM IN VIOLATION OF THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION."
 {¶ 37} Appellant complains he was denied his right to cross-examine three witnesses in violation of his Sixth Amendment rights. These witnesses include his co-defendant Blackshear, the coroner, and the eyewitness Shannell Boone.
 {¶ 38} The Confrontation Clause set forth in theSixth Amendment of the United States Constitution is the right of an accused to confront the witnesses against him. It is designed to ensure, "that a defendant will not be convicted based upon charges of unseen, unknown, and unchallengeable witnesses."State v. Goff, 154 Ohio App.3d 59, 796 N.E.2d 50,2003-Ohio-4524, ¶ 12, citing Lee v. Illinois (1986),476 U.S. 530, 540, 106 S.Ct. 2056, 90 L.Ed.2d 514.
 {¶ 39} Appellant's denial of his right to cross-examine Blackshear will not be readdressed under this assignment of error since this issue was addressed under the first assignment of error. However, in addition to this claimed error, Appellant also takes issue with the trial court's decision to allow the videotaped deposition of the deputy coroner, Dr. Jesse Giles, to be played at trial. Appellant filed a motion in limine in an attempt to require Dr. Giles to testify live at trial, claiming that the state failed to establish that the coroner was unavailable to testify. Contrary to Appellant's motion, however, Appellant's prior trial counsel evidently agreed to the use of Dr. Giles' videotaped deposition. This conclusion is based on the fact that Appellant's prior counsel attended and participated in the deposition without objection. It is also important to note that the deposition was admitted at trial without objection.
 {¶ 40} Appellant also claims that his prior trial counsel was ineffective in his cross-examination of Dr. Giles because he only asked approximately five pages of questions whereas the deposition transcript consisted of 77 pages. Appellant claims that the quantity of his counsel's questions was lacking; he does not take issue with the quality of his prior counsel's questions.
 {¶ 41} Contrary to Appellant's assertions, the record does not reveal that he was denied his right to effective assistance of counsel or his constitutional right of confrontation. Appellant was permitted to cross-examine Dr. Giles through counsel. Further, the length of his counsel's questioning is not indicative of quality. In fact, Appellant fails to mention that his prior counsel was the third attorney to question Dr. Giles. His questioning followed the state's direct examination and Blackshear's attorney's cross-examination. Thus, we can presume that the most relevant questions had been asked and answered before he had the opportunity to question the doctor.
 {¶ 42} Further, once Appellant's prior counsel had the opportunity to question Dr. Giles, he did ask several questions that had yet to be asked. For example, he asked Dr. Giles if there was any evidence that any of the decedent's blunt force injuries were caused by any instruments or objects. Counsel's questions elicited an opinion from Dr. Giles that a pattern of marks on the decedent's face could have been caused by the handle of a knife. (Tr., p. 782.) As noted previously, there was evidence that Blackshear, and not Appellant, hit the victim with a knife.
 {¶ 43} Appellant also asserts that his trial counsel was ineffective in his cross-examination of Dr. Giles because at one point during the deposition he asked Blackshear's counsel how much longer he was going to be. (Tr., p. 775.) This question, however, is far from indicative of the ineffective assistance of counsel.
 {¶ 44} In sum, Appellant fails to direct this Court's attention to anything that his counsel should have asked Dr. Giles that was not addressed. Accordingly, this argument lacks merit.
 {¶ 45} Appellant next argues that he was denied the right to fully cross-examine the eyewitness Shannell Boone. Specifically, he complains that he was denied his right to impeach Boone's credibility by the introduction of documents concerning her felony conviction. (Tr., pp. 671-673; Def.'s Exh. 2-5.)
 {¶ 46} As Appellant points out, Evid.R. 609(A)(1) provides for the impeachment of the credibility of a witness by evidence of a felony conviction. Further, Evid.R. 609(F) provides that one can establish a witnesses' felony conviction either by, "the testimony of the witness on direct or cross-examination, or by public record shown to the witness during his or her examination."
 {¶ 47} However, Appellant's counsel at trial never asked Boone whether she had been convicted of a felony. Instead, counsel asked her about specific dates in an attempt to get her to recall the date of her conviction or the date of her offense. Boone did not recall the importance of these dates. Thereafter, counsel attempted to introduce documents evidencing Boone's felony convictions, but the trial court sustained the state's objection as to this line of questioning.
 {¶ 48} As a result, Appellant's counsel may have been denied the opportunity to fully cross-examine Boone pursuant to Evid.R. 609 if it was counsel's intent to impeach her credibility. This does not appear to have been counsel's objective, however. Appellant's trial counsel explained his motive in attempting to introduce evidence of her felony conviction during his proffer of evidence. Counsel was clearly less interested in impeaching Boone's credibility with her felony conviction than he was about impeaching her memory. Counsel stated during his proffer,
 {¶ 49} "The reason why I was asking her — this is my — the proffer is I would continue to question her about her memory. If she wasn't able to remember something very important that happened to her, her catching a felony and being on probation with the clarity of what date it happened, * * * how can we expect her to know what happened three — over three years ago?" (Tr., pp. 705-706.)
 {¶ 50} Thus, the trial court did not err in sustaining the state's objection as to this line of questioning because Appellant's counsel was addressing the fact that she could not recall the dates of her offense and conviction and was not attempting to impeach her credibility with her felony conviction.
 {¶ 51} Further, even if we should assume the record revealed that Appellant was denied his right to fully cross-examine Boone, "[a] violation of an accused's right to confrontation and cross-examination is not prejudicial where there is sufficient independent evidence of an accused's guilt to render improperly admitted statements harmless beyond a reasonable doubt."Moritz, supra, 17 O.O.3d 92, 407 N.E.2d 1268, paragraph two of the syllabus; State v. Hubbard, 8th Dist. No. 83384, 2004-Ohio-4627.
 {¶ 52} As discussed earlier, there were at least two other independent witnesses identifying Appellant as the individual kicking and jumping on the victim on the morning of her death. As such, the trial court's alleged error in failing to allow counsel to introduce evidence of Boone's felony conviction was harmless.
 {¶ 53} Based on the foregoing, Appellant's second assignment of error lacks merit and is overruled in its entirety.
 {¶ 54} In Appellant's third assignment of error he argues:
 {¶ 55} "THE TRIAL COURT ERRED WHEN IT FAILED TO INSTRUCT THE JURY ABOUT HOW TO VIEW AND WEIGH THE TESTIMONY OF AN ACCOMPLICE AND WHEN IT FAILED TO INSTRUCT THE JURY ON THE ISSUE OF DEFENDANT/APPELLANT'S INTOXICATION."
 {¶ 56} This assignment consists of two arguments. First, Appellant complains about the trial court's jury instruction on accomplice testimony. Specifically, Appellant claims that the trial court failed to comply with R.C. § 2923.03(D). However, Appellant failed to object to the lack of such an instruction and thus waived all but plain error. Crim.R. 30(A) and 52(B); Statev. Long (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, paragraph one of the syllabus.
 {¶ 57} Where there is evidence of complicity and when an accomplice testifies on behalf of the state in exchange for a plea agreement, there is a possibility the accomplice's testimony may be self-serving and biased. Thus, R.C. § 2923.03(D) requires a court to give the jury a special instruction on the credibility of accomplices.
 {¶ 58} Notwithstanding R.C. § 2923.03(D), Appellant's alleged accomplice did not actually testify at trial. Instead, Blackshear's previously recorded police interview was played for the jury as part of the state's case against Blackshear. As such, R.C. § 2923.03(D) is inapplicable.
 {¶ 59} In addition, the trial court did instruct the jury as to a defendant's statement made outside of the presence of his co-defendant. Specifically, the court advised the jury not to consider it as evidence as to the other defendant. (Tr., pp. 1299-1300.)
 {¶ 60} Appellant claims in his second argument under this assignment that the trial court failed to instruct the jury as to his intoxication. He argues that the evidence at trial depicted that he was intoxicated, and as such, he did not have the requisite mental culpability, or "purpose," required for the offense.
 {¶ 61} However, Appellant failed to object to the lack of such an instruction and he did not request one. Thus, he waived all but plain error. Crim.R. 30(A) and 52(B); Long, supra, paragraph one of the syllabus. Plain error should only be recognized in exceptional circumstances to prevent the miscarriage of justice. State v. Lundgren (1995)73 Ohio St.3d 474, 485, 653 N.E.2d 304. Plain error does not exist unless, but for the error, the outcome of trial would clearly have been otherwise. State v. Biros (1997), 78 Ohio St.3d 426,678 N.E.2d 891.
 {¶ 62} Appellant claims that the jury should have been instructed on intoxication since an essential element of aggravated murder is the defendant's purpose. The state must have established that Appellant, "purposely, and with prior calculation and design," caused the victim's death. R.C. §2903.01(A).
 {¶ 63} Before October of 2000, voluntary intoxication was an available defense if it was shown to have prevented the defendant from forming the intent necessary to commit the charged offense.State v. Johnson, 7th Dist. No. 02 CA 206, 2004-Ohio-567, ¶ 12, citing State v. Fox (1981), 68 Ohio St.2d 53, 55, 22 O.O.3d 259, 428 N.E.2d 410. However, as of October 27, 2000, "[v]oluntary intoxication may not be taken into consideration in determining the existence of a mental state that is an element of a criminal offense." R.C. § 2901.21(C).
 {¶ 64} Since Appellant's offenses occurred in 1999, intoxication was an available defense. In State v. Hicks (1989)43 Ohio St.3d 72, 74, 538 N.E.2d 1030, the Ohio Supreme Court discussed the intoxication defense in relation to an aggravated murder charge. It concluded that proof of, "intoxication alone is not enough." Id. Instead, the Supreme Court held,
 {¶ 65} "The issue is whether there was a purpose to kill. Intoxication may reduce one's inhibitions. It may blunt one's appreciation of the long-term consequences of one's acts. It may impair one's judgment, * * *. But purpose is the culpable mental state at issue here — and intoxication, even severe intoxication, can co-exist with purpose." (Footnotes omitted.) Id.
 {¶ 66} R.C. § 2901.22(A) provides, "[a] person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature."
 {¶ 67} It has also been held that in order to negate the "purpose" element of aggravated murder, evidence of intoxication must be such that it shows the defendant did not specifically intend to cause the victim's death. State v. Combs (1994),100 Ohio App.3d 90, 652 N.E.2d 205, dismissed, appeal not allowed71 Ohio St.3d 1472, 645 N.E.2d 735, reconsideration denied71 Ohio St.3d 1494, 646 N.E.2d 469.
 {¶ 68} Upon review of the trial transcript, there was evidence depicting Appellant as highly intoxicated during the early morning hours of the victim's death. This included Appellant's testimony that he had been drinking and smoking marijuana since approximately 11 a.m. that day until at least 3 a.m. the next morning. (Tr., pp. 1134, 1138.) Shantel Daniel also testified that Appellant was highly intoxicated. (Tr., p. 461.)
 {¶ 69} However, the evidence also depicts that Appellant acted with purpose. At least three different individuals witnessed Appellant punch the victim in the face knocking her to the ground. Thereafter, Appellant repeatedly kicked and jumped on her. Accordingly, and based on Appellant's actions depicted at trial, it was evident that it was his specific intention to act in the manner that caused the victim's death.
 {¶ 70} As earlier discussed, Appellant's counsel did not request an intoxication instruction. Instead, it appears as though his counsel may have made a strategic decision to the contrary, since Appellant testified that it was Blackshear who beat and kicked the victim. An argument that Appellant was intoxicated would have undermined his memory of the incident.
 {¶ 71} In any event, the record reflects no plain error and this argument lacks merit. Thus, Appellant's third assignment of error is overruled.
 {¶ 72} Appellant's fourth assignment of error claims:
 {¶ 73} "THE TRIAL COURT ERRED BY ALLOWING THE INTRODUCTION INTO EVIDENCE OF A PHOTOGRAPH OF THE VICTIM WHILE ALIVE, ALONG WITH THE TESTIMONY OF THE VICTIM'S GRIEVING MOTHER AND BY ALLOWING INTO EVIDENCE NUMEROUS GRUESOME PHOTOGRAPHS OF THE VICTIM'S BODY AT THE CRIME SCENE."
 {¶ 74} Appellant argues that the photograph of the victim while alive, her mother's testimony, and the numerous photographs of her body after death were improperly admitted since they appealed to the emotions of the jurors and were unfairly prejudicial.
 {¶ 75} It should be noted that Appellant failed to object to any of this evidence. Thus, Appellant has again waived all but plain error. Crim.R. 30(A) and 52(B); Long, supra, at paragraph one of the syllabus.
 {¶ 76} As set forth previously, plain error does not exist unless, but for the error, the outcome of trial would clearly have been otherwise. Biros, supra.
 {¶ 77} Under Evid.R. 403 and 611(A), the admission of photographs is left to the sound discretion of the trial court.State v. Maurer (1984), 15 Ohio St.3d 239, 264, 473 N.E.2d 768. Nonrepetitive photographs, even if gruesome, are admissible if the probative value of each photograph outweighs the danger of material prejudice to the accused. Id. at paragraph seven of the syllabus; State v. Morales (1987), 32 Ohio St.3d 252, 258,513 N.E.2d 267.
 {¶ 78} In the instant matter, the state introduced nine different photographs depicting the manner in which the victim was found and her position in the crime scene. (Tr., pp. 871-873.) The quantity of photographs may have been unnecessarily repetitive in this case since a lesser number of photographs along with the applicable testimony may have been sufficient to depict the manner in which the victim was found. The record also reflects that sixteen autopsy photographs were introduced at trial. (Tr., pp. 718-725.)
 {¶ 79} Notwithstanding the foregoing, however, Appellant fails to show that the admission of the victim's mother's testimony and the photograph of the victim while alive affected the outcome of his trial. Further, even if we could assume the photographs depicting the victim after her death were unnecessary and gratuitous, Appellant does not demonstrate that the admission of these photographs clearly affected the outcome of his trial. As such, there can be no plain error and this assignment is overruled.
 {¶ 80} Appellant's fifth assignment of error asserts:
 {¶ 81} "THE TRIAL COURT ERRED BY ALLOWING THE STATE OF OHIO TO PRESENT EVIDENCE OF DEFENDANT/APPELLANT'S CHARACTER AND/OR EVIDENCE OF PRIOR BAD ACTS OF DEFENDANT/APPELLANT."
 {¶ 82} Generally, evidence of a defendant's propensity to engage in misconduct and evidence of a defendant's prior misconduct to prove that he acted in conformity with that conduct is inadmissible. Evid.R. 404(A) and (B).
 {¶ 83} Appellant asserts that the trial court committed reversible error when it permitted the state to elicit evidence which showed that Appellant had a history of being untruthful. Appellant claims that this propensity evidence was prohibited under Evid.R. 404(A).
 {¶ 84} As Appellant alleges, the state elicited testimony at least twice depicting him as untruthful. However, Appellant's trial counsel did not object to this testimony. Thus, Appellant waived all but plain error on appeal.
 {¶ 85} It must be stressed that Appellant's defense relied on the fact that he was a liar. This strategy appears to be in response to the state's introduction of two videotaped statements where Appellant tells two different stories about the evening in question.
 {¶ 86} In the first videotaped interview Appellant denied ever being at the apartment complex the night that the victim died. He also denied that he knew the victim. (State's Exh. 63.) In the second tape, Appellant blamed the beating on an individual named Marvin Foster. Appellant even described Foster's car to the police. (State's Exh. 65.) Appellant subsequently admitted at trial that he invented Marvin Foster. (Tr., p. 1154.)
 {¶ 87} Thereafter, Appellant's own counsel elicited testimony from him during which he admitted that he lied to the police in both of his recorded interviews. Notwithstanding those lies, however, Appellant insisted that he was telling the truth at trial.
 {¶ 88} Appellant's third version of the morning in question was presented at trial. Appellant denied kicking and jumping on the victim. Instead, he testified that Blackshear was the one who kicked and jumped on her. (Tr., pp. 1142-1143.) Appellant claimed that he had lied to the police because he did not want to be a snitch and he was afraid for his family. (Tr., pp. 1153-1154.)
 {¶ 89} Appellant's mother, Estella Crosby, testified on his behalf. On cross-examination she conceded that her son had a tendency to make up stories and that he was not always truthful. (Tr., pp. 1104-1105.)
 {¶ 90} Appellant also admitted during his cross-examination that he had previously gone to the police confessing to another murder. This was in spite of the fact that he had not killed anyone. (Tr., p. 1186.) This story was also referenced during Appellant's tape recorded interview, previously played for the jury. (State's Exh. 63.)
 {¶ 91} Based on the foregoing, the trial court did not err when it allowed the reference to Appellant's tendency to lie. Appellant's own defense relied on the fact that he had been untruthful to the police from the beginning of their investigation. As such, Appellant's fifth assignment of error lacks merit and is overruled.
 {¶ 92} Appellant's sixth assignment of error states:
 {¶ 93} "THE TRIAL COURT ERRED IN DENYING DEFENDANT/APPELLANT LOVE'S MOTION FOR A MISTRIAL."
 {¶ 94} It is well settled that a trial court may grant a mistrial on a motion by the parties when, "there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated." (Emphasis omitted.) State v. Abboud
(1983), 13 Ohio App.3d 62, 13 OBR 66, 468 N.E.2d 155, quotingUnited States v. Perez (1824) 22 U.S. 579, 6 L.Ed. 165.
 {¶ 95} A trial court is entitled to broad discretion in considering a motion for a mistrial. Thus, our standard of review on appeal is whether the trial court abused that discretion.State v. Schiebel (1990), 55 Ohio St.3d 71, 564 N.E.2d 54, paragraph one of the syllabus; State v. Williams (1975),43 Ohio St.2d 88, 72 O.O.2d 49, 330 N.E.2d 891. An abuse of discretion is more than error of law or judgment. It implies that the court's attitude was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 {¶ 96} This assignment of error is based wholly on Appellant's alleged denial of his right to confront and cross-examine his co-defendant, Blackshear. He claims that once he was denied this right, he could no longer have been afforded a fair trial.
 {¶ 97} However, and as set forth in assignment of error number one, there were three additional eyewitnesses identifying Appellant as Hubbert's assailant on the morning in question. We will not entirely restate the discussion under this assignment. As such, and pursuant to the Ohio Supreme Court's decision inState v. Moritz (1980), 63 Ohio St.2d 150, 153,407 N.E.2d 1268, paragraph two of the syllabus, this assignment of error lacks merit and is overruled.
 {¶ 98} Appellant's seventh assignment of error asserts:
 {¶ 99} "DEFENDANT/APPELLANT WAS DEPRIVED A FAIR TRIAL DUE TO INEFFECTIVE ASSISTANCE OF COUNSEL."
 {¶ 100} In order to warrant a reversal of a conviction for the ineffective assistance of counsel, a defendant must first show that counsel's performance was deficient. In addition, a defendant must also show that the deficient performance prejudiced the defense by depriving the defendant of a fair trial. Strickland v. Washington (1984), 466 U.S. 668, 687,104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373.
 {¶ 101} Appellant raises several reasons he believes he was denied the effective assistance of trial counsel in the instant matter. Appellant claims that his original trial counsel was ineffective in that he failed to communicate with him or file any motions on his behalf during the first three years of his representation.
 {¶ 102} Appellant correctly points out that his counsel did not file any written motions on his behalf, and then he withdrew as counsel. However, the record reflects that his counsel did request several continuances on Appellant's behalf. The record also reflects that the discovery process was ongoing at the time and that Appellant's counsel appeared at several pretrial hearings on his behalf. In addition, his counsel represented Appellant during the coroner's deposition. Counsel also represented him at the hearing addressing his oral motion to sever his trial from his co-defendant's. We note, however, that Appellant's counsel merely joined his co-defendant's request on the day of the hearing and did not file his own separate motion.
 {¶ 103} Although the trial court's record lacks any written motions filed on Appellant's behalf, the record does reflect that his original counsel represented him at the necessary hearings while the informal discovery process was ongoing.
 {¶ 104} While it may be arguable that counsel's performance appears lacking based on his failure to file formal discovery requests for three years following Appellant's indictment, and his failure to prepare any written motions, there is no indication that his attorney's shortcomings prejudiced Appellant's defense. Accordingly, this argument lacks merit.
 {¶ 105} Appellant also claims that his attorney failed to pursue certain defenses on his behalf. Initially he claims his counsel should have investigated a bloody foot print found at the scene of the incident. However, the evidence revealed that Appellant's gym shoes worn on the night in question tested positive for blood. (Tr., pp. 800-801, 1056.) Further, in attempting to cover up the obvious stains on his shoes, Appellant told Detective Morales that he had spilled barbeque sauce on his shoes. (Tr., p. 1054.) Based on the foregoing, his counsel may have decided not to pursue the identification of the shoe print since there is a likelihood that it matched Appellant's print. Instead, counsel chose to focus his time and resources on another trial strategy. This did not constitute ineffective assistance of counsel.
 {¶ 106} Appellant also argues that his attorneys should have pursued another suspect to whom the victim allegedly owed money for drugs. However, Appellant fails to identify any evidence in the record identifying another suspect. Thus, this argument is purely speculative and lacks merit.
 {¶ 107} Appellant also readdresses arguments set forth in previous assignments of error. Appellant argues that counsel erred in his limited cross-examination of the coroner; that counsel should have pursued the intoxication defense; and that counsel failed to object to character evidence and the state's use of photographs of the victim. These arguments have been fully addressed earlier and found to be without merit.
 {¶ 108} Finally, Appellant claims that his counsel should have further questioned juror number three or used his peremptory challenge for this juror. Juror number three indicated that she had a brother who was shot to death in 1993 in Florida, and the perpetrator was convicted of the offense following trial. (Tr. pp. 596-0.) When asked whether that experience would influence her, juror number three indicated that it, "hits pretty close." However, she then stated she would do her best to set that aside. (Tr., pp. 60-61.)
 {¶ 109} Contrary to Appellant's argument, this does not constitute the ineffective assistance of counsel. The decision to use a peremptory challenge constitutes a tactical decision, which falls, "`well within the range of professionally reasonable judgments.'" State v. Jones (2001), 91 Ohio St.3d 335, 354,744 N.E.2d 1163, quoting Strickland v. Washington (1984),466 U.S. 668, 699, 104 S.Ct. 2052, 80 L.Ed.2d 674.
 {¶ 110} Based on the foregoing, this assignment of error lacks merit in its entirety and is overruled.
 {¶ 111} In Appellant's eighth assignment of error he argues:
 {¶ 112} "DEFENDANT/APPELLANT WAS DENIED A FAIR TRIAL DUE TO THE MISCONDUCT OF BOTH THE PROSECUTOR AND THE POLICE."
 {¶ 113} Appellant claims that the prosecutor improperly took on the role of the victim in his closing argument and improperly appealed to the jury's emotions. The prosecutor, in his closing argument, identified himself as the victim and for three and a half pages in the transcript described the incident that lead to the victim's death from her perspective. Thereafter, the prosecutor indicated that the victim was unable to tell her version of the story because of what Appellant and his co-defendant had done to her. (Tr., pp. 1226-1230.)
 {¶ 114} Appellant argues that the prosecutor's closing argument unfairly and improperly appealed to the juror's emotions. He fails, however, to provide any caselaw in support of this argument. Further, his counsel did not object to the closing argument. Thus, he has waived all but plain error. Crim.R. 30(A) and 52(B).
 {¶ 115} In addition, it has been repeatedly held that, "`the prosecution * * * [has] wide latitude in summation as to what the evidence has shown and what reasonable inferences may be drawn therefrom.'" State v. Hart (1994), 94 Ohio App.3d 665, 671,641 N.E.2d 755, quoting State v. Stephens (1970), 24 Ohio St.2d 76,82, 263 N.E.2d 773; State v. Maurer (1984), 15 Ohio St.3d 239, 15 OBR 379, 473 N.E.2d 768, cert. denied (1985), 472 U.S. 1012,105 S.Ct. 2714, 86 L.Ed.2d 728.
 {¶ 116} Although the prosecutor's tactic in assuming the role of the victim in the instant matter may have appealed to the juror's emotions, this alleged misconduct does not appear to have affected the outcome of Appellant's trial. The evidence on which Appellant was convicted was more than adequate. As such, there was no plain error.
 {¶ 117} Appellant also argues that the police failed to fully investigate co-defendant Blackshear's involvement in the crime. Appellant claims that this failure lead to his conviction because the evidence was unfairly stacked against him. This assertion is unsupported by the evidence. Further, and as noted previously, there are several witnesses identifying Appellant as the main perpetrator, and several witnesses testified that Blackshear was attempting to stop Appellant from battering the victim. (Tr., pp. 445-448, 469, 472, 556-557, 560, 640, 643, 645-646.)
 {¶ 118} Based on the foregoing, this assignment of error lacks merit in its entirety and is overruled.
 {¶ 119} Appellant's ninth assignment of error asserts:
 {¶ 120} "DEFENDANT/APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 121} It has long been held that, "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. MorrisCo. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus. Consequently, if the evidence presented at trial is reasonably susceptible to more than one interpretation, a reviewing court must construe it consistently with the trial court's judgment. Karches v. Cincinnati (1988),38 Ohio St.3d 12, 19, 526 N.E.2d 1350.
 {¶ 122} Appellant was convicted of the aggravated murder of Hubbert in violation of R.C. § 2903.01(A), which provides: "No person shall purposely, and with prior calculation and design, cause the death of another * * *."
 {¶ 123} It is evident in the instant cause that the evidence presented at Appellant's trial supports his conviction. As noted in the first assignment of error, there were four individuals who identified Appellant as the victim's assailant. The witnesses described Appellant as purposefully striking the victim in the face and repeatedly and forcefully jumping on the victim's body. The witnesses also said the victim was having difficulty breathing before Appellant carried her away. (Tr., pp. 445-448, 469, 472, 556-557, 560, 640, 643, 645-646.) The victim was subsequently found dead in her apartment.
 {¶ 124} Appellant argues that the evidence against him was lacking because the coroner failed to establish a causal connection between the injuries Appellant was described as inflicting and the victim's eventual death. However, Appellant is wrong in this assertion. Dr. Giles testified that the victim's cause of death was asphyxia as a result of beating or strangulation. (Tr., p. 736.) Dr. Giles also opined that a foot pressed against one's neck can constitute strangulation. Dr. Giles further stated that markings on the victim's body may have been from a shoe since there was a wavy pattern. (Tr., pp. 748, 783.) Appellant's gym shoes worn the night of the offense tested positive for human blood. (Tr., p. 801.) Dr. Giles also stated that the impact resulting in the victim's fractured nose could alone have caused her death. (Tr., p. 784.)
 {¶ 125} Accordingly, Appellant's conviction was supported by competent, credible evidence. Thus, this assignment of error lacks merit and is overruled.
 {¶ 126} Appellant's tenth assignment of error claims:
 {¶ 127} "DEFENDANT/APPELLANT WAS DENIED HIS RIGHT TO A SPEEDY TRIAL AS THE STATE OF OHIO FAILED TO BRING HIS CASE TO TRIAL WITHIN A REASONABLE TIME OR WITHIN THE TIME REQUIREMENTS AS SET FORTH IN ARTICLE I, SECTION 10 OF THE CONSTITUTION OF OHIO, CODIFIED AT OHIO REVISED CODE SECTION 2945.71."
 {¶ 128} The fundamental right to a speedy trial is encompassed in the Sixth Amendment to the United States Constitution. R.C. § 2945.73 requires an accused to be discharged if he is not brought to trial within the time requirements of R.C. § 2945.71 and R.C. § 2945.72. An individual with a pending felony charge, "[s]hall be brought to trial within two hundred seventy days after the person's arrest." R.C. § 2945.71(C)(2).
 {¶ 129} In the instant case, Appellant executed a waiver of his constitutional and statutory right to a speedy trial on September 8, 1999. This waiver indicated that it was irrevocable.
 {¶ 130} Thereafter, however, Appellant filed a pro se motion seeking to revoke his waiver of his speedy trial rights on July 11, 2002. This motion was subsequently addressed at the July 25, 2002, hearing on his counsel's motion to withdraw. (Motion to Withdraw as Counsel Tr., pp. 3-6.)
 {¶ 131} Appellant indicated at the hearing on his counsel's motion to withdraw that he did not think that his execution of a waiver meant that he would sit in jail for three years without a trial. In response, the trial court judge indicated that he would, "have to set this matter down expediently." (Motion to Withdraw as Counsel Tr., p. 6.) Thereafter, Appellant's case went to trial on November 4, 2002. This was less than four months after Appellant's pro-se motion was filed seeking to withdraw his speedy trial waiver.
 {¶ 132} The Ohio Supreme Court in State v. O'Brien (1987),34 Ohio St.3d 7, 516 N.E.2d 218, addressed the procedure required to revoke an express written waiver of the speedy trial requirement. The O'Brien Court concluded:
 {¶ 133} "Following an express, written waiver of unlimited duration by an accused of his right to a speedy trial, the accused is not entitled to a discharge for delay in bringing him to trial unless the accused files a formal written objection and demand for trial, following which the state must bring the accused to trial within a reasonable time." Id. at paragraph two of the syllabus.
 {¶ 134} Although Appellant clearly indicated that he wanted to revoke his speedy trial waiver in the instant cause, his attempt to withdraw the waiver did not include a demand for trial. (July 11, 2002, Motion to Withdraw Time Waiver; Motion to Withdraw as Counsel Tr., pp. 5-6.) As a result of Appellant's failure to demand trial, the waiver signed on September 8, 1999, was still in effect because he did not follow the law as set forth in O'Brien, supra. State v. Untied (2001), 5th Dist. No. 00 CA 32, 5.
 {¶ 135} Assuming arguendo that Appellant's revocation of his waiver was valid, he was subsequently brought to trial within a reasonable time. O'Brien, supra. Appellant's case went to trial 116 days after he filed the motion to withdraw his speedy trial waiver. During those 116 days, the trial court sua sponte continued the trial twice since it was engaged in a civil jury trial at the time. Further, Appellant filed a motion for bill of particulars and a request for discovery. In addition, Appellant's attorney was permitted to withdraw as counsel on July 26, 2002. New counsel was appointed July 31, 2002. Thereafter, Appellant's new counsel filed ten new motions between August 13, 2002 and October 25, 2002. The result of all of these actions was a tolling of the trial time. Hence, even if Appellant appropriately withdrew his speedy trial waiver, he was tried within a reasonable time thereafter. Appellant's tenth assignment of error lacks merit and is overruled.
 {¶ 136} Appellant's eleventh assignment of error claims:
 {¶ 137} "THE TRIAL COURT ERRED IN OVERRULING DEFENDANT/APPELLANT'S POST CONVICTION MOTION FOR A NEW TRIAL."
 {¶ 138} In this assignment Appellant argues that the trial court erred in denying his postconviction motion for a new trial. Appellant directs this Court's attention to his first ten assignments in support of this argument. Appellant particularly stresses the denial of his right to confront the witnesses against him and the fact that his conviction was not supported by sufficient evidence.
 {¶ 139} As previously addressed separately, however, Appellant's first ten assignments of error lack merit. They will not be readdressed herein.
 {¶ 140} In Appellant's twelfth and final assignment of error he asserts:
 {¶ 141} "DEFENDANT/APPELLANT WAS DENIED A FAIR TRIAL DUE TO THE CUMULATIVE EFFECT OF THE ELEVEN ASSIGNMENTS OF ERROR AS SET FORTH HEREIN."
 {¶ 142} Appellant claims that the errors previously addressed herein collectively amount to the denial of a fair trial. In order to find cumulative error, we must first find that multiple errors were committed at trial. State v. Madrigal (2000),87 Ohio St.3d 378, 397, 721 N.E.2d 52. We must then conclude that a reasonable probability exists that the outcome of the trial would have been different but for the combination of the separately harmless errors. State v. Thomas (Sept. 21, 2001), Clark App. No. 2000-CA-43.
 {¶ 143} As set forth in assignment of error number one, the trial court erred in failing to sever Appellant's trial from his co-defendant's, since Appellant and Blackshear had mutually antagonistic defenses. However, Appellant failed to prove that he was prejudiced by the joinder since there were several independent eyewitness accounts of the offense.
 {¶ 144} While this is disturbing, this sole error does not compel the application of the cumulative-error doctrine. Further, "there can be no such thing as an error-free, perfect trial, and * * * the Constitution does not guarantee such a trial." Hill,
supra citing United States v. Hasting (1983), 461 U.S. 499,508-509, 103 S.Ct. 1974, 76.
 {¶ 145} Based on the foregoing, this assignment of error lacks merit.
 {¶ 146} In conclusion, all of Appellant's assignments of error fail. As such, Appellant's conviction is hereby affirmed in full.
Vukovich, J., concurs.
DeGenaro, J., concurs.