IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE, | § | |
| | § | No. 602, 2018 |
| Employer Below, | § | |
| Appellant, | § | Court Below: Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | C.A. No. K18A-04-002 |
| NICHOLAS GATES, | § | |
| | § | |
| Claimant Below, | § | |
| Appellee. | § | |

Submitted: May 8, 2019
Decided: June 25, 2019

Before **VALIHURA**, **VAUGHN**, and **SEITZ**, Justices.

Upon appeal from the Superior Court. **AFFIRMED**.

John J. Klusman, Esquire (*Argued*), and Kenneth L. Wan, Esquire, Tybout Redfearn & Pell, Wilmington, Delaware, for Appellant, State of Delaware.

Walt F. Schmittinger, Esquire (*Argued*), and Candace E. Holmes, Esquire, Schmittinger and Rodriguez, P.A., Dover, Delaware, for Appellee, Nicholas Gates.

**VAUGHN**, Justice:

# I. INTRODUCTION

The State of Delaware appeals from an order of the Superior Court that affirmed a determination by the Industrial Accident Board (the Board) that Nicholas Gates was working within the course and scope of his employment when he was injured in a motor vehicle collision. At the time of the collision, Gates was employed by the State as a road-maintenance equipment operator for the Department of Transportation (DelDOT). The collision occurred while he was responding to a "call-back" after his normal work hours. He was called back to attend to a road-side accident. In other words, he had completed his normal shift for the day and left for home, but was called back to perform whatever road maintenance might be necessary as a result of the road-side accident. As was common practice with call-backs, he was to proceed first to the DelDOT yard to get equipment and to then continue on to the road-side accident site. His collision occurred while he was on his way to the DelDOT yard.

Gates sought workers' compensation benefits from the State for his injury. At the hearing before the Board, the State argued that State of Delaware Merit Rule 4.16 [1] and a document titled "Call-Back Pay Guidelines and Recommended

---

[1] The Merit Employee Relations Board, which adopted the Merit Rules, lists this rule as Rule 4.16. *See* State of Delaware Merit Rule 4.16, available at https://merb.delaware.gov/wp-content/uploads/sites/131/2018/03/2018-Revised-Merit-Rules-complete.pdf. This rule is codified in the Delaware Administrative Code as Rule 5.16. *See* 19 Del. Admin. C. § 3001-5.16. Because the parties have referred to it as Rule 4.16, we will as well. Therefore, unless otherwise indicated, references and citations to the Merit Rules in this Opinion will be to the rules provided on the

Procedure" (the Call-Back Pay Guidelines)[2] were part of Gates's employment contract. It further argued that according to these provisions, Gates was not to be paid for a call-back until he arrived at the DelDOT yard. Because Gates's collision occurred before he arrived at the yard, the State argued, his injury occurred outside the course and scope of his employment and was, therefore, not compensable under Delaware's Workers' Compensation Act (the Act).[3] The Board looked to the parties' prior course of conduct to determine the terms of the employment contract and found that Gates's injury was compensable under the Act because, based on the parties' prior course of conduct, he "was working within the course and scope of his employment contract when the motor vehicle accident occurred."[4]

The Superior Court affirmed the Board's decision.

The State makes two arguments on appeal to this Court. First, it contends that the Board committed legal error by misapplying the principles set forth by this Court to determine if an employee was injured within the course and scope of employment. It repeats the argument it made to the Board that the terms of Gates's employment—Merit Rule 4.16 and the Call-Back Pay Guidelines, in particular— indicate that he was not to be paid for a call-back until he arrived at the DelDOT

---

Merit Employee Relations Board's website.
[2] App. to Appellant's Opening Br. at A109 [hereinafter *Call-Back Pay Guidelines*].
[3] 19 *Del. C.* §§ 2301-2397.
[4] Appellant's Opening Br. Ex. B, at 12 [hereinafter *Bd. Decision*].

yard and that, therefore, the Board erred in finding that his injury occurred within the course and scope of his employment. Second, it contends that the Board's decision was not supported by substantial evidence because Gates admitted at the Board hearing that he was not paid for the call-back on the day of the collision.

Gates contends that notwithstanding Merit Rule 4.16 or the Call-Back Pay Guidelines, the State's actual practice was to pay him (and his co-workers) for a call-back from the time the call was received. Accordingly, he argues that the Board correctly determined that he was acting within the course and scope of his employment at the time of the collision.

For the reasons that follow, we conclude that the Superior Court, and therefore the Board, should be affirmed. The Board applied the correct legal standard by first looking to the terms of the employment arrangement (or contract) to determine whether Gates's injury occurred within the course and scope of his employment. The Board, moreover, acted within its discretion in finding, based on Gates's unrebutted testimony as to the parties' course of conduct prior to the collision, that the terms of Gates's employment contract established he was to be paid for a call-back from the time he received the call and that, at the time of the collision, he was working within the course and scope of this contract. These factual findings are supported by substantial evidence and will not be disturbed on appeal. Based on

3

these factual findings, the Board did not err in determining that Gates's injury was compensable under the Act.

## II.   FACTS AND PROCEDURAL HISTORY

The Board held a hearing on March 15, 2018, at which it heard testimony from Gates and a human-resource representative who testified on the State's behalf.   The Board also considered documents submitted by the State regarding overtime service, stipulated facts, and competing medical expert testimony.   The critical issue at the hearing was whether Gates was acting within the course and scope of his employment at the time of the collision.

At the hearing, Gates testified that at the time of the collision, he had worked for the State for four months as an equipment operator, with his primary job duties being road maintenance.   His regular hours of employment were 7:00 a.m. to 3:00 p.m., Monday through Friday.   He was classified as essential personnel and drew overtime pay for work outside his regular hours.   Such after-hours work is classified as "call-back" time.   He was required to respond to call-backs, and a failure to respond could result in termination.   He testified that the State frequently called him back for work after hours.   For a call-back, he explained, he was paid a minimum of four hours overtime even if he only worked one hour.   According to Gates, at the time of the collision, crew leaders recorded the regular working hours of employees, but employees recorded their own call-back hours.   He also testified

4

that he would record his call-back time from the moment he received the call and would stop recording his time when he completed the job. Gates testified that on the day of the collision, he received the call-back around 3:30 p.m., after his shift had ended at 3:00 p.m.

The State's human-resource representative, Brittany Ford, testified regarding Merit Rule 4.16 and the Call-Back Guidelines, explaining that for someone in Gates's position, call-back pay is calculated from the time the employee arrives at the yard, not from the time of the phone call.[5] She explained the State's position that Merit Rule 4.16 and the Call-Back Guidelines formed part of Gates's employment agreement. She testified that Merit Rule 4.16 and other Merit Rules were referenced in the one-hour orientation provided to all new employees, although she acknowledged that the State did not provide physical copies of the Merit Rules to new employees. Instead, the Merit Rules were merely referenced during employee orientations, and the employees were instructed as to where they could access them. She also admitted that the call-back policy was not discussed during new-employee orientations and acknowledged that supervisors were responsible for explaining the call-back policy to new employees.

---

[5] App. to Appellant's Opening Br. at A67-68; *see also Call-Back Pay Guidelines* ("Call-back pay is paid to the employee from the time the employee arrives at the designated worksite and begins work until the time the employee has completed all call-back requests and has left the worksite." (emphasis omitted)).

5

Gates testified that he had not received formal training regarding timesheet submission, and he was unaware of whether he ever received copies of Merit Rule 4.16 or the Call-Back Guidelines. He explained that the older and more experienced employees told him that the start time for overtime began at the time he received the call-back. He had been called back many times prior to the collision and had, consistent with the more experienced employees' instructions, submitted multiple time sheets for approval without issue. On all of the timesheets where call-back time was involved, he recorded his start time from the moment he received the call. He testified that for the first time, on the day of the collision, he was not paid overtime after receiving a call-back.

On April 9, 2018, the Board issued its decision finding that Gates was acting within the course and scope of his employment contract when he was injured and that, therefore, his injury was compensable under the Act. First, the Board explained that although "no actual written employment contract was presented," the State submitted a policy (Merit Rule 4.16 and the Call-Back Guidelines), which it contended was part of Gates's employment contract.[6] Recognizing that "no agreement, rule, regulation or other device shall in any manner operate to relieve any employer . . . from any liability created by [the Act],"[7] the Board determined that,

---

[6] *Bd. Decision* at 9 & n.1.
[7] *Id.* at 9-10 (alteration omitted) (quoting 19 *Del. C.* § 2305).

6

with respect to defining the employment agreement or contract, the "critical issue is what is actually done as part of the employment and not what is written in a policy," especially when "the evidence reflects that the rule or provision is not followed or strictly applied."[8]

The Board then discussed the testimonial evidence regarding the employment arrangement to determine the terms of Gates's employment contract. The Board credited Gates's testimony as showing that he and his co-workers had always recorded the call time as the start time when they received a call-back, that he was required to respond to call-backs, and that a failure to respond could result in termination. As to the State's evidence, the Board discussed Ford's testimony regarding the Merit Rules. Specifically, the Board noted that "the merit rules are 'referenced' at the new employee orientation," that "copies of the rules (and presumably copies of the 'Guidelines and Recommended Procedure') are not provided to new employees," that "the callback policy is not discussed during new employee orientation," and that "the supervisors are responsible for explaining the policies to employees."[9] Moreover, although Ford testified that employees are not paid for mileage for travel to call-backs but instead are paid from the time they arrive at the yard, she agreed that she was not Gates's direct supervisor, she had no

---

[8] *Id.* at 10.
[9] *Id.* at 12.

7

responsibility for reviewing timesheets or call-back time for employees, and there are auditors who monitor and oversee timekeeping.

Given the evidence presented, and considering the totality of the circumstances, the Board determined that Gates "was working within the course and scope of his employment contract when the motor vehicle accident occurred."[10] "Weighing the evidence presented and assessing [Gates's] credibility," the Board explained, "[Gates] was engaged in his contractual duties for Employer when the injury occurred. [Gates's] employment contract as an equipment operator, and its required job duties, clearly 'contemplated' his driving to the yard to retrieve a vehicle and equipment, and is, therefore, work related."[11] The Board concluded that Gates was "engaged elsewhere in or about the employer's business where the employee's services require the employee's presence as part of such service at the time of the injury" and that, therefore, his injury was compensable under the Act.[12]

### III. DISCUSSION

Generally, this Court's review of an Industrial Accident Board decision is "limited to a determination of whether there is substantial evidence to support the Board's findings."[13] "Substantial evidence means such relevant evidence as a

---

[10] *Id.*

[11] *Id.* (quoting *Spellman v. Christiana Care Health Servs.*, 74 A.3d 619, 625 (Del. 2013) (en banc)).

[12] *Id.* at 13 (quoting 19 *Del. C.* § 2301(19)(a)).

[13] *Betts v. Townsends, Inc.*, 765 A.2d 531, 533 (Del. 2000).

8

reasonable mind might accept as adequate to support a conclusion."[14]    Alleged errors of law are reviewed *de novo*.[15]

To be eligible for workers' compensation benefits for personal injury, the claimant must prove that the injury was sustained "by accident arising out of and in the course of employment."[16]    "Personal injury sustained by accident arising out of and in the course of the employment" covers an employee while he or she is (1) "engaged in, on or about the premises where the employee's services are being performed, which are occupied by, or under the control of, the employer (the employee's presence being required by the nature of the employee's employment)" or (2) "engaged elsewhere in or about the employer's business where the employee's services require the employee's presence as a part of such service at the time of the injury."[17]    "The determination of whether an injury arises out of and in the course of employment is highly factual, and is resolved under a totality of the circumstances analysis."[18]

Under *Spellman v. Christiana Care Health Services*, the Board (or a reviewing court) must first look to the terms of the employment agreement to determine

---

[14] *Oceanport Indus., Inc. v. Wilm. Stevedores, Inc.*, 636 A.2d 892, 899 (Del. 1994) (internal quotation marks omitted).
[15] *Arrants v. Home Depot*, 65 A.3d 601, 605 (Del. 2013).
[16] 19 *Del. C.* § 2304.
[17] *Id.* § 2301(19)(a).
[18] *Spellman*, 74 A.3d at 623.

9

whether a particular injury occurred within the course and scope of employment.[19] "If the evidence of the contractual terms resolves the issue of whether the injury arose out of and occurred in the course of the claimant's employment, then the analysis can end."[20] But if the contract-related evidence is insufficient to resolve the scope-of-employment issue, the Board (and any reviewing court) may look to rules of construction created by case law—the "going and coming" rule and its exceptions—that best further the statutory purpose.[21]

The Board found that Gates "was working within the course and scope of his employment contract when the motor vehicle accident occurred."[22] This finding is supported by substantial evidence. The Board found credible Gates's testimony as to the parties' actual course of conduct prior to the collision, and the State introduced no evidence contradicting Gates's testimony that he had submitted timesheets in the past where he listed his start time for a call-back as the time he received the call, that he had been paid in accordance with this, and that no one receiving the timesheets ever said this was incorrect.

In addition, the Board's determination that the parties' actual course of conduct was more probative of the contract of employment regarding call-back pay

---

[19] *Id.* at 625.
[20] *Id.*
[21] *Id.*
[22] *Bd. Decision* at 12.

10

than Merit Rule 4.16 and the Call-Back Procedure is supported by substantial evidence. The document submitted to the Board is a two-page document titled "Call-Back Pay Guidelines and Recommended Procedure."[23] The document begins by reciting Merit Rule 4.16. The language that the State relies upon—that "[c]all-back pay is paid to the employee from the time the employee arrives at the designated worksite and begins work until the time the employee has completed all call-back requests and has left the worksite"[24]—is not found in Merit Rule 4.16. The merit rule discusses call-back pay but makes no mention of when call-back pay begins when an employee receives a call-back. The language that does so is contained in a separate portion of the document titled "Guidelines for Merit Rule 4.16."[25] The language in the Guidelines for Merit Rule 4.16 is not included in either the publication of the rules on the Merit Employee Relations Board's website[26] or the Delaware Administrative Code.[27] If Gates had never been informed of the specific provision upon which the State relies and if this provision had not been

---

[23] *Call-Back Pay Guidelines*.
[24] *Id.* (emphasis omitted).
[25] *Id.*
[26] *See* State of Delaware Merit Rule 4.16.1, available at https://merb.delaware.gov/wp-content/uploads/sites/131/2018/03/2018-Revised-Merit-Rules-complete.pdf ("FLSA-covered employees who have left the work site at the end of their scheduled shift and are called back for overtime service shall be paid for such service in accordance with the provisions for overtime pay, provided that minimum total payment is equivalent to four times their regular straight time hourly rate. Employees shall be paid according to this call back provision or the overtime provision, whichever is greater, not both.").
[27] *See* 19 Del. Admin. C. § 3001-5.16.1 (providing same as Merit Rule 4.16.1 on the Merit Employee Relations Board's website).

actually followed, then it was never properly incorporated into his employment contract. In this regard, the witness for the State admitted that the call-back policy is not discussed during new-employee orientation, could not confirm whether Gates himself had been so instructed, and could not confirm whether the specific provision the State relies upon was actually followed at his place of employment.

The Board found, as a factual matter, that Gates's employment arrangement contemplated that he would be compensated for a call-back starting at the time of receiving the call. This factual finding is supported by substantial evidence and will not be disturbed on appeal. Based on this factual finding, the Board determined that Gates was "engaged elsewhere in or about the employer's business where the employee's services require the employee's presence as a part of such service at the time of [his] injury" and, therefore, was injured within the course and scope of his employment.[28] Accordingly, there is no need to consider the going-and-coming rule or its exceptions.

Finally, it is necessary to briefly address the State's specific argument that the Board's decision is not supported by substantial evidence because Gates admitted at the hearing that he was not paid overtime for the day of the collision. The State contends that this is conclusive proof that the terms of his employment contract did not include compensation for call-backs starting at the time calls are received. The

---

[28] *Bd. Decision* at 13 (quoting 19 *Del. C.* § 2301(19)(a)).

12

mere fact that Gates was not paid in accordance with the parties' prior course of conduct for the call-back on the day of the collision, however, does not render the Board's decision reversible for want of substantial evidence. Despite this admission, the Board did not abuse its discretion in crediting Gates's testimony as to the parties' prior course of conduct and in using this testimony to define the terms of his employment.

## IV. CONCLUSION

For the foregoing reasons, the judgment of the Superior Court is affirmed.