# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| TIFFANY DUDLEK, | ) | |
| | ) | |
| Employee-Appellant, | ) | |
| | ) | |
| v. | ) | C.A. No. N23A-12-005 SPL |
| | ) | |
| JOVIE CHILDCARE | ) | |
| REIMAGINED, | ) | |
| | ) | |
| Employer-Appellee. | ) | |

Submitted: August 9, 2024
Decided: October 3, 2024

## MEMORANDUM OPINION AND ORDER

*Upon Consideration of the Appeal from the Decision of the
Industrial Accident Board*
**AFFIRMED**

Jennifer Donnelly, Esquire, KIMMEL CARTER ROMAN PELTZ & O'NEILL, P.A., Wilmington, Delaware, *Attorney for Appellant, Tiffany Dudlek.*

Joseph Andrews, Esquire, LAW OFFICE OF JOSEPH ANDREWS, Dover, Delaware, *Attorney for Appellee, Jovie Childcare Reimagined.*

**LUGG, J.**

# I. INTRODUCTION

This is an appeal of a decision of the Industrial Accident Board ("Board"). Tiffany Dudlek appeals the Board's determination that she failed to establish, by a preponderance of the evidence, that she was injured in an industrial accident while working for Jovie Childcare Reimagined ("Jovie"). Having reviewed the Board's decision and the supporting record, this Court affirms the Board's denial of Dudlek's Petition.

# II. FACTUAL AND PROCEDURAL BACKGROUND

## A. The Parties

Dudlek is a thirty-year-old mother, nanny, and certified daycare assistant teacher who worked for Jovie as a childcare provider.[1] Jovie is a national company that provides babysitting services through backup care contracts with Delaware employers.[2] Jovie uses a mobile application ("app") called "Find My Childcare" to connect employees with job opportunities matching their availability.[3] Most Jovie employees work part-time, sporadic schedules.[4]

---

[1] D.I. 12, Ex. B ("Hearing Transcript" or "Hrg. Tr.") at 7, 9, 11, 57.
[2] Hrg. Tr. at 89.
[3] Hrg. Tr. at 29.
[4] Hrg. Tr. at 90.

## B. The Industrial Accident

Dudlek claimed she was injured on October 17, 2022 during a babysitting assignment as a Jovie employee.[5]  Dudlek asserted that, while caring for a three-year-old child at a client's home in Wilmington, Delaware, she was seated on the floor when the child tripped and inadvertently struck Dudlek in the back of the head with a toy Tonka truck.[6]  Dudlek testified that she finished the remaining hour of her work assignment, but instantly felt dizzy and suffered a migraine.[7]  And, Dudlek stated, on her way home from Wilmington to Middletown, Delaware, she remained dizzy and pulled over twice to vomit.[8]  Dudlek did not sustain any bruising or bleeding to her head, and, following the accident, she continued with her "normal routine," awaiting new work assignments from Jovie.[9]

Although Dudlek believed her symptoms would improve, she stated that by November 2022, she was vomiting daily and finding it difficult to perform routine tasks.[10]  Dudlek testified that she canceled her scheduled work shift on November 7, 2022, because she did not feel well.[11]  On November 10, 2022, Dudlek used the

---

[5] Hrg. Tr. at 7-8.
[6] Hrg. Tr. at 8.
[7] Hrg. Tr. at 8.
[8] Hrg. Tr. at 9.
[9] Hrg. Tr. at 10, 61.
[10] Hrg. Tr. at 10-11.
[11] Hrg. Tr. at 11.

"Slack" app to contact Michelle Russell, a Jovie supervisor, to report her alleged work accident.[12] On November 15, 2022, Dudlek filed a formal incident report.[13]

### C. Dudlek's Medical Treatment

Nearly a month after the alleged accident, Dudlek sought treatment for dizziness at the Middletown emergency room.[14] She was diagnosed with a concussion and referred to the concussion clinic at Wilmington Hospital.[15] On November 23, 2022, Dudlek visited the concussion clinic and reported that her vomiting and dizziness symptoms had worsened since the alleged work incident.[16] The clinic prescribed Dudlek Gabapentin, sent her for visual and balance therapy twice a week at ATI Physical Therapy, referred her to First State Orthopedics for a neck evaluation, and ordered her to remain out of work.[17]

In early 2022, Dr. James Moran, a specialist in physical medicine and rehabilitation, began treating Dudlek at First State Orthopedics for pain in the back of her neck, at the base of her skull, and shooting down her right arm.[18] Dudlek underwent two injections to her neck, which did not provide her any relief.[19] In

---

[12] Hrg. Tr. at 10, 12, 13; D.I. 12, Ex. A ("Board Decision") at 3.
[13] Hrg. Tr. at 20.
[14] Hrg. Tr. at 11.
[15] Hrg. Tr. at 11, 14.
[16] Hrg. Tr. at 14-15.
[17] Hrg. Tr. at 15, 22.
[18] Hrg. Tr. at 23, 64.
[19] Hrg. Tr. at 24.

addition to receiving treatment from Dr. Moran, Dudlek continued to engage in physical therapy and work with the concussion clinic.[20] The concussion clinic kept Dudlek on total work disability through May 2023.[21] At the time of the October 3, 2023 hearing, Dudlek was under the care of Dr. Zaslavsky with First State Orthopedics.[22] Dudlek testified that, despite being cleared of her concussion, she still experienced motion sickness in vehicles.[23] Furthermore, she reported that her neck symptoms intensified, affecting her hand function.[24]

### D. Dudlek's Pre-Existing and Intervening Health Conditions

In 2015, Dudlek sustained a concussion and back pain from a motor vehicle accident.[25] After the accident, she underwent six months of concussion therapy and received back treatment for several months.[26] Dudlek testified that her concussion symptoms and low back pain fully resolved, and that she stopped treatment by 2016.[27] Dudlek acknowledged that, following the motor vehicle accident, she further injured her back when she tripped on a toy and fell down the stairs at her

---

[20] Hrg. Tr. at 21, 24.

[21] Hrg. Tr. at 24.

[22] Hrg. Tr. at 25.

[23] Hrg. Tr. at 25.

[24] Hrg. Tr. at 25-26.

[25] Hrg. Tr. at 26.

[26] Hrg. Tr. at 26.

[27] Hrg. Tr. at 26-27.

4

home.[28]  Additionally, Dudlek confirmed that she suffered from headaches for two years prior to the alleged October 17, 2022, work accident.[29]  In 2019, Dudlek sought treatment from her primary care doctor for her headaches, but she denied receiving any treatment for headaches or concussion-like symptoms during 2022.[30]  Dudlek also confirmed a history of anxiety and depression, but these diagnoses have not led to formal work-related restrictions or caused dizziness, nausea, or blurred vision.[31]

After the alleged work accident, Dudlek reported incidents that exacerbated her concussion and neck injuries.[32]  On December 1, 2022, Dudlek told ATI Physical Therapy that she jarred her neck while attempting to grab her child while running.[33]  On December 19, 2022, Dudlek complained of increased neck pain and dizziness after colliding with someone.[34]  On January 27, 2023, Dudlek informed ATI Physical Therapy that she experienced symptoms due to a "lack of quiet time."[35]  On February 23, 2023, ATI Physical Therapy documented that Dudlek experienced dizziness, blurred vision, and increased headaches after attending church.[36]  On February 28,

---

[28] Hrg. Tr. at 27.
[29] Hrg. Tr. at 27-28.
[30] Hrg. Tr. at 28.
[31] Hrg. Tr. at 28.
[32] Hrg. Tr. at 38-39.
[33] Hrg. Tr. at 38-39.
[34] Hrg. Tr. at 39.
[35] Hrg. Tr. at 39-40.
[36] Hrg. Tr. at 40-41.

2023, Dudlek encountered similar symptoms following a birthday party.[37] On March 9, 2023, Dudlek reported dizziness and disorientation after taking her daughter to the hospital.[38]

### E. Conflicting Expert Opinions

Jovie retained Dr. Richard Bennett, a physician specializing in neurology and electromyography, to evaluate Dudlek.[39] Dr. Bennett found that Dudlek displayed no evidence of brain dysfunction.[40] Additionally, Dr. Bennett compared Dudlek's 2016 MRI (taken after her 2015 car accident) and 2023 MRI (taken after the alleged industrial accident) of her cervical spine and concluded that there was no acute change between the MRIs; rather, her injuries remain "longstanding and pre-existing."[41] Based upon his physical examination of Dudlek and his review of her medical records, Dr. Bennett concluded that Dudlek did not sustain a concussion in October 2022, but that she may have suffered a temporary cervical strain, which had resolved.[42] Dr. Bennett attributes Dudlek's description of symptoms to pre-existing psychological and medical issues, unrelated to the alleged industrial injury.[43]

---

[37] Hrg. Tr. at 41.
[38] Hrg. Tr. at 41.
[39] Hrg. Tr. at 100-02.
[40] Hrg. Tr. at 104.
[41] Hrg. Tr. at 107-08.
[42] Hrg. Tr. at 116-17.
[43] Hrg. Tr. at 112, 116, 136.

Ultimately, Dr. Bennett opined Dudlek's medical treatment was "excessive and largely ineffective and unnecessary pertaining to the accident of October 17, 2022."[44]

Conversely, Dr. Moran concluded that the treatment he and other medical professionals provided Dudlek was reasonable, necessary, and related to the work accident.[45] Dr. Moran compared Dudlek's 2016 and 2023 MRIs and observed a negative change between the two films.[46] Dr. Moran disagreed with Dr. Bennett's opinion that Dudlek did not sustain a concussion and only sustained a cervical strain.[47] Dr. Moran testified that, if Dudlek was forcibly struck in the manner she described, it was conceivable a neck injury and concussion resulted.[48]

## F. Jovie Reports

James Doody, a Jovie employee, testified that approximately one week after the October 17, 2022 accident, he learned Dudlek was pursuing alternative employment opportunities.[49] On October 25, 2022, Jessica Coleman of Great New Beginnings sought a reference for Dudlek.[50] Furthermore, Doody testified that on

---

[44] Hrg. Tr. at 117-18.
[45] Hrg. Tr. at 77-78.
[46] Hrg. Tr. at 72.
[47] Hrg. Tr. at 76-77.
[48] Hrg. Tr. at 86.
[49] Hrg. Tr. at 91.
[50] Hrg. Tr. at 91-92.

November 2, 2022, Coleman informed Michelle Russell, a former Jovie manager, that Great New Beginnings hired Dudlek.[51] Dudlek was an active employee with a scheduled work assignment for Jovie on November 7, 2022,[52] but, Doody testified, Dudlek canceled that scheduled shift with Jovie via the Slack app, stating "she couldn't work because she was asked to work at the daycare all that week."[53]

Doody attempted to produce Slack communications and records that remained available to Jovie from their free, ninety-day trial period; however, he relied upon his personal recollection and handwritten notes when testifying about Coleman's communication and Dudlek's reason for canceling her November work assignment.[54] Doody did not produce emails from Coleman or Slack communications from Dudlek regarding her inability to work.[55]

### G. Dudlek's Petition and the Board's Determination

On March 1, 2023, Dudlek filed a Petition to Determine Compensation Due with the Delaware Industrial Accident Board.[56] Dudlek sought acknowledgement of a concussion and neck injury, payment of medical expenses, and a closed period of disability from November 23, 2022, through September 5, 2023, based on injuries

---

[51] Hrg. Tr. at 92, 94.
[52] Hrg. Tr. at 92.
[53] Hrg. Tr. at 92.
[54] Hrg. Tr. at 93, 96.
[55] Hrg. Tr. at 93-96.
[56] D.I. 13 ("Answering Brief" or "Ans. Br.") at 1.

she claimed she sustained on October 17, 2022, while working for Jovie.[57]  Jovie disputed the claim in its entirety.[58]

On October 3, 2023, the Board conducted an evidentiary hearing.[59]  Following the hearing, the Board concluded that it "does not find Dudlek's claim about the work-related incident on October 17, 2022, to be credible."[60]  The Board explained, "[c]laimant has failed to prove by a preponderance of the evidence that she was injured in an industrial accident on October 17, 2022, while working for Jovie Childcare Reimaged." [61]

On December 15, 2023, Dudlek appealed the Board's decision to this Court.[62]  Dudlek contends that the Board's determination that Dudlek failed to prove a work accident occurred on October 17, 2022, is erroneous and not supported by substantial evidence.[63]

## III.   STANDARD OF REVIEW

On an appeal from the Board, this Court's review is limited to determining whether the Board's conclusions are supported by substantial evidence and free from

---

[57] D.I. 12, Board Decision at 1-2.

[58] Board Decision at 2.

[59] Board Decision at 2.

[60] Board Decision at 28.

[61] Board Decision at 29.

[62] D.I. 12, Ex. C ("Notice of Appeal").

[63] D.I. 12 ("Opening Brief") at 11.

legal error.[64]  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[65]  The Court must "search the entire record to determine whether, on the basis of all of the testimony and exhibits before the agency, it could fairly and reasonably reach the conclusion that it did."[66]  The record must be viewed "in the light most favorable to the party prevailing below, resolving all doubts in its favor."[67]

This Court "does not sit as a trier of fact with authority to weigh the evidence, determine questions of credibility, and make its own factual findings and conclusions."[68]  Rather, it is the exclusive function of the Board to weigh the evidence and determine questions of credibility.[69]  "Moreover, where factual determinations are at issue, [an appellate Court] takes due account of the Board's experience and specialized competence and of the purposes of the Delaware

---

[64] *Sheppard v. Allen Family Foods*, 279 A.3d 816, 826 (Del. 2022).

[65] *Powell v. OTAC, Inc.*, 223 A.3d 864, 870 (Del. 2019) (cleaned up).

[66] *Mullins v. City of Wilmington*, 2023 WL 5322292, at *2 (Del. Super. Ct. Aug. 18, 2023) (quoting *Nat'l Cash Reg. v. Riner*, 424 A.2d 669, 674-75 (Del. Super. Ct. 1980)).

[67] *Rhodes v. Diamond State Port Corp.*, 2010 WL 2977331, at *2 (Del. July 29, 2010) (quoting *Gen. Motors Corp. v. Guy*, 1991 WL 190491, at *3 (Del. Super. Aug. 16, 1991)).

[68] *Bailey v. RNJ Farms, LLC,* 2024 WL 3675605, at *2 (Del. Super. Ct. Aug. 6, 2024) (internal citations omitted).

[69] *Cottman v. Burris Fence Const.*, 2006 WL 3742580, at *3 (Del. Dec. 19, 2006).

worker's compensation statute."[70] It is well established that "the credibility of the witnesses, the weight of their testimony, and the reasonable inferences to be drawn therefrom are for the Board to determine."[71] "If the Board's decision is free from legal error and supported by substantial evidence, this Court must sustain the Board's decision even if this Court might have decided the case differently if it had come before it in the first instance."[72] And, this Court must uphold the Board's factual findings unless "no satisfactory proof" supports them.[73]

## IV. DISCUSSION

### I. The Board's Decision is Supported by Substantial Evidence.

Dudlek argues the Board's conclusion that Dudlek failed to prove by a preponderance of the evidence that an industrial accident occurred on October 17, 2022, is "against the great weight of evidence and unsubstantiated by the record."[74] This Court finds, however, that the Board's decision is supported by substantial evidence. The Board possessed the exclusive authority to assess the credibility of

---

[70] *Zayas v. State,* 273 A.3d 776, 785 (Del. 2022) (citing *Spellman v. Christiana Care Health Servs.,* 74 A.3d 619, 623 (Del. 2013)).

[71] *Trincia v. Dick's Sporting Goods,* 2024 WL 1110401, at *5 (Del. Super. Ct. Mar. 14, 2024) (quoting *Coleman v. Dep't of Lab.*, 288 A.2d 285, 287 (Del. Super. Ct. 1972)).

[72] *Gutierrez v. Jamestown Painting*, 2019 WL 972161, at *3 (Del. Super. Ct. Feb. 26, 2019).

[73] *Powell,* 223 A.3d at 871.

[74] D.I. 12 ("Opening Brief" or "Op. Br.") at 13.

witnesses,[75] and when considering conflicting expert opinions, the Board maintained discretion to adopt one expert's testimony over another so long as substantial evidence supported its decision.[76] The Board may, as it did here, draw reasonable inferences from the testimony when assessing the credibility of claims.[77]

The Board did not find Dudlek's account of the alleged work accident credible.[78] The Board concluded, "the records and expert testimony connecting these complaints to a work accident on October 17, 2022, are entirely reliant on Claimant's statements to her medical providers."[79] Dudlek did not offer any evidence to corroborate her description of the alleged accident, nor did she offer any witnesses to corroborate her symptoms on the day of the alleged accident, in the three weeks leading up to her treatment, or after receiving treatments from the concussion clinic at Wilmington Hospital, ATI Physical Therapy, and First State Orthopedics.[80] Further, the Board found Dudlek's description of the toy Tonka truck and how it struck the back of her head unpersuasive.[81] The Board's conclusion that Dudlek did not meet her burden is supported by substantial evidence.

---

[75] *Hall v. Rollins Leasing*, 1996 WL 659476, at *2 (Del. Super. Ct. Oct. 4, 1996).
[76] *Gutierrez*, 2019 WL 972161, at *5.
[77] *See Powell*, 223 A.3d at 872-73.
[78] Board Decision at 28.
[79] Board Decision at 28.
[80] Board Decision at 27.
[81] Board Decision at 27.

The Board found Dudlek's delayed reporting and medical treatment impacted their assessment of her credibility.[82] Dudlek testified that she waited until November 10, 2022, to report the alleged work accident to Jovie and then sought medical treatment the following day.[83] The Board deemed the approximate one-month delay unreasonable because Dudlek asserted she sustained immediate symptoms that worsened over time and interfered with her daily activities.[84] Dudlek testified that when she was struck, she immediately felt dizzy and experienced a migraine.[85] Dudlek also stated that she remained dizzy during her commute home and had to stop twice to vomit.[86] By November 2022, Dudlek reported daily vomiting, and, as a result, canceled her November 7, 2022 shift with Jovie.[87] Based upon the seriousness of the symptoms she described, the Board did not "find it credible that [Dudlek] would delay seeking treatment for so long if these circumstances were true."[88]

> As the Delaware Supreme Court recently noted, in *Powell v. OTAC*:
>
> Whether an injury arose out of and in the course of employment is essentially a question of fact. Often, as in this case, the factual finding depends in large measure on the Board's assessment of the credibility

---

[82] Board Decision at 26-27.

[83] Board Decision at 26.

[84] Board Decision at 26.

[85] Hrg. Tr. at 8.

[86] Hrg. Tr. at 9.

[87] Hrg. Tr. at 10-11.

[88] Board Decision at 26-27.

of the witnesses who testify before it. It is the exclusive function of the Board to evaluate the credibility of witnesses.[89]

As in *Powell*, the Board considered all of the evidence and found Dudlek's reporting lacking in credibility. This finding is supported by substantial evidence and this Court may not independently evaluate witness credibility.

The Board, as it is entitled to do when presented with conflicting expert testimony, favored Dr. Bennett's opinion over Dr. Moran's.[90] Dr. Bennett attributed Dudlek's subjective complaints to pre-existing psychological and medical issues unrelated to her alleged work injury.[91] Dudlek's extensive medical history included prior evaluation and treatment for head and neck injuries in 2015 and 2016, and comorbidities including anxiety and depression.[92] Dudlek also reported numerous incidents that occurred after the alleged work accident that exacerbated her injuries.[93] The Board found there was substantial evidence that Dudlek's complaints remained "longstanding and pre-existing."[94]

The evidence offered at the October 3, 2023, hearing supports the Board's determination that Dudlek failed to establish by a preponderance of the evidence that

---

[89] *Powell*, 223 A.3d at 871.
[90] Board Decision at 28.
[91] Hrg. Tr. at 112, 116.
[92] Board Decision at 28.
[93] Hrg. Tr. at 38-39.
[94] Hrg. Tr. at 108.

she sustained injury in an industrial accident on October 17, 2022, while working for Jovie. The Board's decision is supported by substantial evidence and is free from legal error.

## II. The Board Properly Considered the Evidence Before It.

To the extent Dudlek contends that the board improperly considered certain evidence from her employer, that argument, too, lacks merit. Administrative agencies are not required to strictly adhere to the Court's rules of evidence.[95] "The Rules of Evidence do not strictly apply to administrative hearings. Rather, the agency may hear all evidence which could conceivably throw light on the controversy."[96] Section 1331.14.3 of the Industrial Accident Board Regulations provides:

> The rules of evidence applicable to the Superior Court of the State of Delaware shall be followed insofar as practicable; however, that evidence will be considered by the Board which, in its opinion, possesses any probative value commonly accepted by reasonably prudent persons in the conduct of their affairs. The Board may, in its discretion, disregard any customary rules of evidence and legal procedures so long as such a disregard does not amount to an abuse of its discretion.[97]

---

[95] *Zayas*, 273 A.3d at 785.

[96] *Garrett v. Amazon.com, Inc.,* 2018 WL 2485919, at *2 (Del. Super. Ct. June 1, 2018) (cleaned up).

[97] *Zayas,* 273 A.3d at 785 (quoting 19 Del. Admin. C. § 1331.14.3).

15

"An abuse of discretion occurs when the Board's decision has exceeded the bounds of reason in view of the circumstances, or so ignored recognized rules of law or practice as to produce injustice."[98] The Board may evaluate both hearsay and non-hearsay evidence to make factual findings to reach a decision supported by substantial evidence. "Only when the hearsay is incompetent will the Board's reliance on such testimony be deemed an abuse of discretion. This issue only becomes relevant, however, if the Board's decision rests solely upon hearsay evidence."[99]

Dudlek contends the Board's acceptance of, and reliance upon, Doody's testimony was erroneous and an abuse of discretion.[100] Doody testified based on his recollection and his handwritten notes.[101] Dudlek argues that the Board erred by considering Doody's hearsay testimony and documents not produced in discovery.[102] But the "admission of incompetent hearsay evidence does not warrant a reversal of the Board's decision so long as there is other competent evidence with probative value in the record to support the Board's decision."[103]

---

[98] *Zayas*, 273 A.3d at 786 (cleaned up).

[99] *Garrett*, 2018 WL 2485919, at *2 (internal citations omitted).

[100] Op. Br. at 15.

[101] Hrg. Tr. at 91, 92, 93, 95, 96.

[102] Op. Br. at 15.

[103] *Goldsmith v. Unemployment Ins. Appeal Bd.*, 1982 WL 591942, at *2 (Del. Super. Ct. Mar. 9. 1982).

To the extent that Doody offered hearsay evidence considered by the Board, it is clear that the Board's decision was supported by other substantial evidence. Various factors, including Dudlek's own testimony, impacted the Board's assessment of the credibility of her claims. First, Dudlek failed to report the accident or seek treatment for her alleged injuries for nearly a month after the incident.[104] The Board deemed this reporting and treatment delay unreasonable, given the extent of Dudlek's injuries.[105] Additionally, Dr. Bennett, based on physical examination and review of medical records, connected Dudlek's complaints to pre-existing medical conditions rather than the alleged work accident.[106] The Board was also troubled by Dudlek's inconsistent account of the accident and the absence of witnesses to corroborate her claims and symptoms.[107] Thus, upon consideration of all the evidence presented, it is clear that the Board relied on far more than Doody's testimony to support its decision. Accordingly, the Board's decision is supported by substantial evidence and free from legal error.

---

[104] Board Decision at 26.

[105] Board Decision at 26.

[106] Board Decision at 28.

[107] Board Decision at 27.

## V. CONCLUSION

The Board's determination that Dudlek failed to prove by preponderance of the evidence that a work accident occurred on October 17, 2022, is free from legal error and supported by substantial evidence. The Board's denial of Dudlek's Petition for Compensation is **AFFIRMED.**

**IT IS SO ORDERED.**

_____
**Sean P. Lugg, Judge**